LITTLE
ROCK,
Jan'y 1839.

KEATTS
vs.
RECTOR.

·James B. Keatts *against* Elias Rector.

Appeal *from Pulaski Circuit Court, in Chancery.*

A judgment or decree is final, when it concludes the whole matters in the cause, and when the term at which it was pronounced has expired, and must be so considered as against the whole world.

But *as to the defendant* under the Territorial Statute, a decree is not final, or ready for execution, if he except to the decree, on or before the third day of the next term after it is rendered. The defendant is therefore entitled to appeal after he has filed his exceptions, and they have been disallowed.

But on such appeal, he will be confined to the exceptions which he took in the court below : for if there were other errors, he waives them by not pointing them out in his exceptions.

These exceptions are like an argument for rehearing, and may go to the whole equity of the case; and are not restricted to errors on the face of the decree.

The clause in the Territorial Statute, which required cases in chancery to be set down for final hearing at the term previous to the trial, is only directory to the parties themselves: and if they proceed to trial, and neither party objects that the causes have not been set for final hearing, the objection will be deemed to be waived, and cannot be insisted in the court above.

If the defendant elects to demur, plead and answer to the same bill, care must be taken that the plea does not cover the ground of the demurrer, nor the answer that of the plea.

Where the defendant first pleaded the Statute of Fraud, and after his plea was overruled, presented the same plea in his answer, the court below properly sustained exceptions to so much of his answer as set up the Statute of Frauds as a defence, and ordered it to be stricken out.

But by this decision of the court below, the whole answer was not annulled— although the defendant did not ask leave to amend;—but so much of the answer as was good, remained in the case, and should have been considered by the court in rendering the decree.

When a plea of the Statute of Frauds is overruled, if the defendant then files his answer, he waives and withdraws his plea; and has no longer any right to insist on the Statute as a defence.

Upon appeal, in such case, the Statute is not, legitimately speaking, before the court of appeals, and it would be entirely proper to determine the case independent of it.

The doctrine of specific performance examined.

Although it is to be regretted that the Statute has been virtually set aside by the doctrine of part performance, yet that doctrine is so well established that this court is bound to be governed by the decisions.

Nothing can be considered part performance, which does not put the party in such a situation that a fraud can be practised upon him by the other, unless the agreement is performed throughout.

Acts, to constitute part performance, must clearly appear to have been done solely with a view to the contract being performed.

Possession, if delivered and obtained solely under the contract, and in reference exclusively to it, will take the case out of the Statute ; and especially if the party has made repairs and improvements.

So where the party seeking relief has been placed by the contract in such a situation that he cannot be put *in Statu quo* without injury, by reason of

LITTLE
ROOK.
Jan'y 1839

KEATTS
vs.
RECTOR.

his having performed his part; there the case is taken out of the Statute. Courts of Equity have regard to time, so far as respects good faith and diligence; but if circumstances of a remarkable nature have prevented a party from complying strictly with his contract; still if he has acted only negligently and not culpably, his case will be treated with indulgence, and even favor.

Payment of purchase money is not such part performance as takes a case out of the Statute.

Where A. bought lands at auction, and after they were struck off to him, agreed to permit B. to become equally interested in the land, and that B. should receive the deed in his own name, *upon the condition* that he should pay the purchase money, and should re-convey to A. an undivided moiety of the land, upon A's applying therefor in a reasonable time, and paying half the purchase money and interest, and half the value of all improvements—B. will be compelled to re-convey, though the whole contract rests in *part,* and he pleads the Statute of Frauds.

The Statute of Frauds can never be so used or construed as to be a means of fraud.

This is a bill in chancery for the specific execution of a parol agreement in relation to the sale of land.

The bill charges that the lands granted by an act of Congress to the Territory of Arkansas, for the purpose of building a court house and jail, and also for the purpose of establishing a seminary of learning, were, in pursuance of the proclamation of the governor, offered and exposed to public sale in the month of November, in the year of our Lord one thousand eight hundred and thirty-three; and that the complainant *Elias Rector,* being the highest bidder, purchased lot number eight, on the south side of Arkansas river, containing by actual survey sixty-seven acres, for the sum of six and a fourth dollars per acre, and that he, being the highest bidder, also purchased the north east and south east quarter of north west fractional quarter of fractional section seven in township one north of range eleven west, containing eighty acres, and adjoining lot number eight, for the sum of two dollars and twenty-five cents per acre; and that both of the said tracts or parcels of land, were a part of the lands granted by the government of the United States for the purposes aforesaid, and that the Governor had full power and authority vested in him by law to make the sale, and execute deeds of conveyance. That the terms of the sale agreed on, was one fourth of the purchase money to be paid in hand, one fourth in six months from the date of the sale, one fourth in twelve months thereafter, and the remaining one fourth in eighteen months from the day of sale. The bill further states, that the deeds from the Governor to the complainant were regularly made out and ready for execution, and were in this complainant's name; but at the special instance and request of *James B. Keatts,* (who is made defendant,) it

was agreed between the parties, that they should be both equally and jointly interested in the purchase of the land, and that the title should pass and vest in them, making them partners and joint owners of the same. That this agreement or contract was entered into upon the express condition, that *Keatts* should pay all the purchase money as it became due; and for the advances thus made by him for the use and benefit of the complainant, it was further stipulated between them, that the complainant should have a reasonable time allowed him, to pay back his part of the purchase money with interest. The bill further charges that, at the earnest solicitation and request of the defendant, the complainant permitted the deeds that were made out in his name, to be changed or destroyed, and caused other deeds to be made out and executed by the Governor, conveying all the right, title, and interest in the land to the defendant; and that upon the execution and delivery of these deeds, the defendant took actual possession of the land, and has enjoyed it ever since; and that he has erected valuable improvements upon it, and had it in cultivation at the time of filing this bill. It further states that the defendant never claimed to be the entire owner of the land, but always spoke of it, as the joint property of himself and the complainant, and admitted and averred it so to, until its value had greatly increased; and it was not until 1835, he ever pretended to be the sole and lawful proprietor of the same.— The bill further represents that, before the institution of this suit, the complainant tendered to the defendant one half of the purchase money and interest from the time of payment, and also one half of the value of the improvements put upon the land, and demanded a deed from him of one equal and undivided moiety of the land, which he refused to execute, alleging that he was the sole and real owner of the premises. It then concludes by praying for a specific execution of the contract, and that the defendant be compelled to execute to the complainant a deed in fee simple, conveying to him and his heirs forever, one undivided moiety of the land, with all of its appurtenances, and that a writ of injunction issue restraining the defendant from selling, or in any manner disposing of it; and also staying him from the commission of waste, and that such other and further relief be granted as justice and equity may require.

By the order of the Circuit Court an injunction was granted to the complainant, and a summons was issued out of chancery, in conformity to the writ, and the prayer of the bill.

Q

LITTLE
ROCK.
Jan'y 1839
KEATTS
vs.
RECTOR.

At the December term, 1836, the cause was continued by consent, and this entry put of record: " That either party have leave to take depositions of witnesses before any justice of the peace without a rule or dedimus of the court; and it is further agreed that either party may demur, answer, or amend bill of complaint as the case may require."

On 9th day of March, 1837, the complainant filed his amended bill of complaint. It simply recites and reasserts all the charges in his original bill, and contains the further and additional allegation—That the complainant permitted the deeds drawn to himself and in his name to be cancelled, and other deeds of conveyance for the land to be purchased and executed by the Governor to the defendant on the express agreement between the parties, that the deeds, although absolute on their face, were only to be considered and taken as a mortgage, and as an indemnity to secure the defendant in the payment of the one half of the purchase money, he was to advance for the complainant. It further states that, shortly after the defendant had made the last payment for the land, the complainant made a tender of his part of the purchase money, with interest; and it then prays as in the original bill.

On the 10th day of April, 1837, the defendant appeared, and by way of defence as an answer, put in the plea of the Statute of frauds and perjuries, in bar to the complainant's bill for relief. The plea sets out the Statute in the exact words of the act, and is signed by the defendant's solicitor, and sworn to by himself. This plea was overruled, and afterwards, and on the 5th day of May, 1837, the respondent filed his answer to the complainant's bill.

The answer admits the sale of the land; the Governor's authority to make it, and to execute the deeds of conveyance. It then proceeds to state, that the respondent was prevented from attending the sale, and as he was desirous to become the purchaser of the lots described in the bill, he requested the complainant to bid them off, provided they did not exceed five dollars per acre. It further states that the complainant did bid off the lots, and he paid for the lot number eight, seven dollars and twenty-five cents per acre, and for the other lot, two dollars and twenty-five cents per acre; and that after the sale the complainant proposed to the respondent to take the land on speculation, and to be equally and jointly interested with him, to which he consented; confidently believing that the complainant undertook jointly with him to comply with the terms of the sale, which was to pay one

half of the purchase money in hand, and to execute their joint bonds or notes for the payment of the other instalments as they became due. It further avers that the complainant never did comply with his part of the agreement, but utterly failed so to do; though he was often solicited to come forward and perform his contract. It further states that the respondent was at last prevailed on by the Governor to comply with the terms of the sale, rather than lose the benefit of the purchase, and that about that time the complainant came to the respondent, and informed him that he was about to leave the country, and assured him, if he would make the first payment, that the complainant would pay the other instalments. It alleges that the respondent did make the first payment, and complied in all respects with the agreement of the sale, and that he heard nothing more of the transaction until he had paid all the purchase money, and had received a deed and certificate regularly executed by the Governor to him for the land. The answer further states that the respondent was put to great inconvenience and loss in raising the purchase money, and that he considers any agreement he might have made with the complainant not binding, by reason of the neglect, or non-performance of the complainant's part of the contract. It denies there was any such agreement as is alleged in the bill, and if there was any such he insists it was a parol agreement, not reduced to writing and signed by the respondent, nor by any other person lawfully authorized by him; and it alleges that such an agreement as the one set up by the complainant in his bill is not binding, by reason of the Statute of frauds and perjuries. The answer then pleads the Statute formally in bar of the complainant's right to the specific execution of the contracts, and prays for the bill to be dismissed with costs.

At the April term, 1837, the defendant's plea of the Statute of frauds and perjuries was set down to be heard, and after argument, was adjudged to be insufficient.

At the October term, 1837, the complainant filed exceptions to so much of the respondent's answer as pleads the Statute of frauds and perjuries, in bar to the equity of his bill, and prayed that the defendant may be compelled to amend his answer by striking out that part of it, which relies on the Statute as constituting a good defence; and after argument upon the point, the court adjudged the exceptions were well taken, and held the answer to be insufficient. The record does not show that the defendant offered to amend his answer, though leave

LITTLE, ROCK

Jan'y 1839

KEATTS
vs.
RECTOR.

was given him. The court then proceeded to enter a final decree in the case. The decree on its face contains a formal recital of the allegations in the bill, and the proof taken in the cause; and then affirms it is ordered, adjudged, and decreed, that the title to an undivided moiety, or half of the land described in the bill, together with all the appurtenances thereto belonging, do pass to, and vest absolutely in the complainant in fee simple, and to him and his heirs and assigns forever; and that the said land, with the hereditaments, be henceforth held jointly by the said *Keatts* and *Rector*, their heirs and assigns, as joint tenants; and that the complainant recover his costs by him in his behalf expended.

This decree was entered up on 23rd of November, 1837.

On the third day of January, 1837, there is an agreement entered of record by the parties, which recites the previous order in relation to taking depositions and the manner of pleading. This agreement is signed by the complainant, and the solicitor of the defendant; and it declares that no exceptions shall be taken to the reading of any of the depositions on account of want of notice, time, or manner, or place of taking them; and it extends to all depositions that were taken previous to the making of the entry, as well as to those that should subsequently come in.

On the 1st day of March, 1838, the respondent appeared and filed his exceptions to the decree of the court, a copy of which was served on the solicitor for the complainant, one month before the commencement of the term at which the exceptions were overruled, and from the judgment and decree of the court, disallowing the exceptions— the defendant has brought up this case by appeal to the Supreme Court.

The case was argued at the July Term, 1838, by HALL & SCOTT.

FOWLER, for the appellant:

Appellant contends that said plea was properly interposed, and improperly overruled; that the Statute upon which it is founded is broad and comprehends every degree and character of contract for the sale of lands, " or about any in or concerning them." And every contract in relation thereto is invalid, unless the " agreement or some memorandum, or note thereof, shall be in writing, and signed by the party, to be charged therewith," &c. No memorandum of this contract was reduced to writing, or signed; therefore could not be enforced either

LITTLE
ROCK,
Jan'y 1839

KEATTS
*vs.*
RECTOR.

in law or chancery.   Nor was such agreement to be performed within one year from the time of making it.   Vide *Gey. Dig.* 126; *Pope, Steele & McCampb. Dig.* 135.

If such plea was overruled by the Court, and *Keatts* obtained leave to answer over as he did, he had a right according to strict chancery practice to set up the Statute in his answer in bar.   1 *Fonb. Eq.* top page, 148, 149, in notes; 1 *Pet. Cond. Rep.* 338; 1 *Hen. & Munf.* 91; 3 *Hen. & Munf.* 161; 1 *Marsh.* 436; 3 *Marsh.* 445; *Sugden on Vend.* 76 *et seq.*; 1 *Johns. Ch. Rep.* 143; *Mad. Ch.* 382; 14 *Ves.* 375; 6 *Ves.* 39; 12 *Ves.* 471; *Price Ch.* 208.

He was entitled to the defence, either by plea alone, or by insisting on the defence in his answer, and having availed himself regularly of both modes, he must be entitled to it under one or the other.— His answering over did not surrender his right under the plea; and if it did amount to a waiver of the plea, still upon answer he had a right to insist on it.   *Bibb's Rep.* 590, *Greenup* vs. *Srong*; 2 *Pirt. Dig* 418; 1 *Marsh.* 436; 1 *Mad. Ch.* 378, 382, *et seq.*

In order to take the case out of the Statute, according to the English decisions, *Rector* ought to have alleged and proved a part performance.   Such part performance was not set up in the bill; therefore the plea was a bar to the action.   To entitle *Rector* to this position, he must have done some act to his own prejudice in furtherance of the agreement, which he had not alleged.   He neither paid money or took possession of the lands, and made improvements thereon.   *Com. on Con.* 81; *Fonbl. Eq.* 175, *et seq.* 1 *Mad.* 376; *Sug. on Vend.* 79, *et seq.*

*Rector* having under a parol agreement with *Keatts,* desisted from the purchase, towards which he had made some advances, and permitted *Keatts* to purchase, although upon condition that he, *Rector,* was in future to derive a benefit therefrom, yet equity will not relieve.— The Statute of Frauds, &c. is a bar.   Vide *Vern. Rep.* 627, *Lamas* vs. *Bayly;* 2 *Pirt. Dig.* 417; 4 *Bibb Rep.* 102.

A parol contract, to authorize its enforcement, must be definite and certain in its terms, and as to time, &c.   This was not, and if *Rector* even had rights he slept upon them until they were lost.   *Lex, vigilantibus, non domientibus, est.* 1 *Fonbl. Eq.* 150 *in notes*; 14 *Ves.* 519; 10 *Ves.* 311; 1 *Peters' Rep.* 388; 1 *Mad. Ch.* 376, *et seq.* 382 *et seq. Sug. on Vend.* 78, *et seq.*; 1 *Mad. Ch.* 371.

The allegation that *Rector* tendered one half of the value of the

LITTLE
ROCK,
Jan'y 1859
~~~~~
KEATTS
vs.
RECTOR.

improvements, is too uncertain.  He should have designated some amount that they were worth specifically, and tendered that.  The statement that he tendered no certain amount, is conclusive against himself, that he made no tender at all; and the decree on this ground was improperly rendered.  The same objection applies to his alleged tender of the purchase money and interest.  1 *Bibb's Rep.* 590, *Greenup* vs. *Strong.*

The Bill is also defective in this, and should have been dismissed on final hearing, because Governor Pope was not made a party, which was indispensably necessary to a full and final adjudication; because *Rector* did not bring, or offer to bring the money into court, the tender was only partial; and because the bill did not pray a final adjudication; leaving the whole matter after decree subjected necessarily to another chancery suit for *partition.*  A bill for want of Equity may be dismissed on final hearing.  Equity abhors circuity of action.

The court should not have proceeded to final hearing and decree, without first directing *Keatts* to file an amended answer, and without having first, at a *previous Term*, set down the cause for final hearing.  Vide *Gey. Dig.* 107, sec. 8 : 112; *Pope, Steele, & McCamp. Dig.* 110, sec. 8.  116, p. 109, sec 4.

But a single clause of *Keatts'* answer was stricken out—that setting up the Statute of Frauds, &c. in defence—the residue of the answer remained in full force, and should have been taken into consideration by the court, in rendering the decree.

That portion of the answer not excepted to, denies all the material allegations of the bill, and sets out a contract *wholly different.*  Taking the answer as a full rebutter against the evidence of the strongest witness in favor of the bill, the residue of the evidence preponderates in favor of the answer.  Besides the answer *positively denies* that *Rector* ever complied with his contract, or made *any tender whatever* of *money*, as alleged in the bill, or otherwise.  Those statements in the answer stand *wholly uncontradicted by the evidence;* and upon them the bill ought to have been dismissed on final hearing.  1 *Johns. Ch. Rep.* 146, *Phillips vs. Thompson.*

The decree is founded in error, and contains fatal errors on its face.  It alleges that the bill is wholly unanswered, which is not true by the residue of the record, which shows an answer on file, and in full force.  It also states that all the allegations of the bill are fully proved; whereas there is no evidence on record to show that *Rector* had performed

his contract, or tendered any money, as alleged in his bill. Decree mentions no deposit of money for the one half of the improvements made by *Keatts,* which was absolutely necessary before any decree could be rendered. It is not final and conclusive between the parties; a bill for partition is yet necessary to put an end to litigation. "Expedit reipublicae sit finis litium." Nor does the decree make any disposition of the money said to have been deposited, which was also necessary to make the decree final and conclusive.

It is the frauds of *plaintiffs,* not of defendants, against which the Statute is designed to provide; and should always be construed with that view. 1 *Bibb Rep.* 205, *Grant's Heirs* vs. *Craigmiles.*

The old English doctrine, that allegation of *part performance* takes the case out of the Statute, is exploded, and should not receive countenance in this country. It is as much *necessary* that the evidence of part performance should be reduced *to writing, &c.,* as it is that the *contract itself* should. Otherwise the Statute would be either a *dead* letter, or would be opening the door to frauds and perjuries, instead of preventing them. 1 *Bibb Rep.* 205; 2 *Fonbl. Eq.* top page, 150, *in notes;* 1 *Serg. & Rawle.* 83; 1 *Johns. Ch. Rep.* 283, 284; 1 *Binn,* 218; 4 *Desaus. Rep.* 77; 4 *Bibb,* 59; 2 *Pirt Dig.* 416; 3 *Marshall,* 445, *lit. sel. ca.* 193; 2 *Marshall,* 106; 3 *Marshall,* 246; 3 *Monroe,* 170, 5 *Lit. Rep.* 98; 3 *Marsh.* 57; 5 *Monroe,* 408; 4 *Bibb,* 102; 1 *Munf.* 510; 1 *Mod. Ch.* 384; 1 *Johns. Ch. Rep.* 105; *Jeremy's Equity, passim.*

Cummins & Pike, for the appellee:

The appellee contends that the decree was properly entered, upon three grounds. First, by the Statute of frauds was no defence against the relief prayed that the bill, either when set up as a plea, or in the answer. Second, because if it were a defence, the appellant should have rested his case when the plea was overruled, and by answering over he waived his right to insist upon the Statute as a defence. And third, because he was not at liberty by the rules of chancery practice to set up the Statute anew in his answer after it had been overruled in the shape of a plea.

First, the Statute of frauds is not a bar to this action.

The case must be distinguished from the cases where specific performance is sought of a parol contract for the sale and purchase of lands. It is not the fact that any such contract existed. The bill sets up a state of case which shows, and it also directly alleges, it to be the fact that the conveyance to *Keatts* was in the nature of an equitable mort-

*In the right margin:* LITTLE ROCK, Jan'y 1839 — KEATTS vs. RECTOR.

LITTLE
ROCK,
Jan'y 1839

KEATTS
vs.
RECTOR.

gage to secure the repayment of one half the purchase money, with interest. When the land was struck off to *Rector* by the auctioneer, his title to the land became fixed, and he then permitted the deed for it to be made to the appellant upon certain conditions of reconveyance. 4 *Johns. Ch. Rep.* 659. So it is *Keatts* himself who claims by parol contract.

The land having been stricken off by the auctioneer to the appellee, and the deed of conveyance thereto made out in his name, he was the real owner of the land, because either he or the seller might have maintained an action for the specific performance of such contract of. sale. *Chit. on Con.* 208. The appellant thinking the purchase made by the appellee an advantageous one, applied to him to be admitted to an interest therein. To this the appellant agreed, on the conditions aforesaid; and as he was about leaving the country, he agreed that the deeds to the land, then the joint property of himself and the appellant, should be drawn in the name of the appellant, and it was done. Here was no sale from the appellee to the appellant, of the undivided half now in dispute. It was openly declared, and well understood, that the appellant took the deed, as to the one half, only as trustee for the appellee. These are the clear and distinct allegations of the bill. Is parol evidence admissible to sustain such a state of case? If. it be, then the plea of the Statute of Frauds was no bar. A brief examination of authorities will show the admissibility of parol proof in a case like the present.

Many cases may be found in which parol proof has been admitted, notwithstanding writings have been signed between the parties. For instance, when a declaration is made *before* a deed is executed, *showing the design with which it was executed*, the decisions in the court of chancery have been grounded upon parol proof. 1 *Dallas*, 426. And in the case of *Harvey* vs. *Harvey*, 2 *Chan. Cas.* 180, three successive chancellors decided, on the parol proof of a single witness, against a deed of settlement. In cases of fraud and of *trust*, though no trust was declared in writing, exceptions have likewise taken place. 1 *Dallas*, 426; *Thynn* vs. *Thynn;* 1 *Vern.* 296. As where an absolute deed was given, but intended to be in *trust*, on parol proof of the party's intention, the trust was decreed. 1 *Dall.* 426, *Hampton* vs. *Spencer*, 2 *Vern.* 288; *Bellasis* vs. *Campton*, 2 *Vern.* 294; *Hosir* vs. *Reed*, 9 *Mod.*88.

The court will remark that the question whether a case is one of trust, mortgage, or fraud, must of course depend entirely on the bill

and the statements therein, when that question is raised on the plea of LITTLE ROCK.
the Statute. In the present case the bill explicitly declares that the Jan'y 1830
deed to the appellant was only meant as a mortgage, as to the one KEATTS
half, and that the appellant held and still holds that half in trust for the *vs.* RECTOR.
appellee. Parol evidence is therefore admitted. See also, as to
this point, 7 *Serg. & R.* 114.

That parol evidence is admissible to show that a mortgage only, and
not an absolute sale was intended, see 5 *Strong* vs. *Stewart*, 4 *J. C.*
*R.* 167; *James* vs. *Johnson*, 6 *J. C. R.* 417; *Young* vs. *Peachy*, 2
*Atkyns*, 454; *Joyves* vs. *Statham*, 3 *Ark.* 388; *Murphy* vs. *Trigg*, 1
*Lit.* 72; *Hughes* vs. *Edwards*, 9 *Wheat.* 489; *Skinner* vs. *Miller*, 5 *Lit.*
84; 3 *Mon.* 409; *Blanchard* vs. *Kenton*, 4 *Bibb*, 451; 5 *Binney*, 490.

Another point in this case is, that the agreement for reconveyance
of one half of the land to the appellant, is but a portion of the parol
agreement entered into by the parties. It was under and by that parol
agreement alone, that the appellant obtained possession of, and title
to the land in question. The right of the appellant to receive a deed
from the seller rested entirely on that parol agreement. Under it, he
has had possession of the land for several years, until, as he at first ex-
pected, it has increased ten fold in value. He went into that posses-
sion under that parol agreement. Possession, delivered in consequence
and pursuance of an agreement, is such a degree of performance as is
sufficient to take a contract out of the Statute. *Powell on Contracts*,
180; *Butcher* vs. *Stasseley*, 1 *Vernon*, 363, and *Lamas* vs. *Bayley*, 2
*Vern.* 627; *Powel on Contr.* 187.

The contract of the appellee with the appellant having been fully
performed, and the appellant having thereby received great benefit,
it is such a part performance as will take the case out of the Statute.
2 *Johns. Rep.* 587, 1 *Fonblanque*, 182, and cases there cited.

There is still another principle which proves the *plea* of the Statute
of Frauds, to have been rightly overruled: It is, "that if there is any
charge in the bill which is an equitable circumstance in favor of the
plaintiff's case, against the matter pleaded, as fraud, &c. that charge
must be denied by way of answer, as well as by averment in the
plea." In this case, the the averment that the deed was meant as
a mortgage, and that the appellant held only as a trustee, are such
charges of equitable circumstances. Yet the plea was filed alone,
and was therefore insufficient. *Beames Pl. in Eq.* 22, 24, 178, 184;

R

LITTLE
ROCK,
Jan'y 1839

KEATTS
vs.
RECTOR.

1 *Fonb.* 181 *note*; 1 *Cond. Eng. Ch. Rep.* 3; *Goodrich* vs. *Pendleton,*
3 *J. C. R.* 384

With one other remark the appellant will leave this point: That
a deposite of title deeds to land creates a mortgage, is too well settled
to need authority quoted. 2 *Hovenden,* 204. In what does this case
differ from such an one? Did not the appellee in fact deposit the title
deeds to one half the land in the hands of the appellant? *Bick* vs.
*Ellames, et al.* 2 *Ans.* 431; *Plumb* vs. *Fluitt, id.* 438.

Second—That the appellant, by submitting to answer after plea
overruled, waived his right to insist upon the matter set up in the plea,
and can now have no advantage of the Statute of Frauds. Such a
plea is like a demurrer to the bill. It admits every thing to be true,
which it does not expressly controvert, and claims to be excused from
answering to the bill. *Blake's Ch. Prac.* 112; *Beames Pl.* 9. Nor
is the general protestation considered a denial of the facts in the bill.
It is but the exclusion of a conclusion, and as in a demurrer at law, it
merely prevents the effect of such allegation in another action. It
would seem at once to follow that the appellant, having by his plea
admitted the bill to be true, he could not, after his plea was overruled,
answer over and *deny* the facts in the bill, as he has done, without
withdrawing his plea. If he did withdraw it in the contemplation of
law, he can now have no advantage of it. A demurrer in an action
at law must be withdrawn before the party can plead over.

Third—The appellant was not at liberty to set up the Statute anew
in his answer, after it had been overruled in the shape of a plea.—
Matters of fact may be set up twice, but when an issue of law has
been once made up, and finally adjudicated by the court, it cannot be
again presented to the same court in an answer. *Coster* vs. *Murray,*
7 *J. C. R.* 167; *Freeland* vs. *Johnson,* 2 *Ans.* 407.

TRAPNALL & COCKE, upon the same side:

The bill is filed by the complainant to enforce a parol contract for
land. The defendant pleads, and relies upon the Statute of Frauds.

The appellee contends that this case is taken out of the Statute by
part performance, and consequently the Statute is no bar.

*Rector* had bid off the land at public sale, and the deeds were
drawn to him. He agreed with the appellant that he might take the
deeds to himself, and pay the purchase money upon the understanding
that he should make the appellant a deed to one half upon the pay-
ment of one half the purchase money, with interest.

How did *Keatts* get into the possession of the land in dispute?— LITTLE ROCK, Undoubtedly by part performance of the parol contract. How did Jan'y 1839 he get the deeds to himself? By purchase from the Governor? No. KEATTS *vs.* He obtained the deeds by part performance of the parol contract;— RECTOR. consequently the record presents a part performance of the parol contract.

For the rule in equity in relation to part performance of contract, the counsel for the appellee refers to the *2nd Vol. Story's Equity p.* 63, 4, *note* 1, and cases cited, in which Judge Story has extracted the principle with great accuracy from the reported cases, and illustrated it with great force. It is obvious, he says, that when one party has executed his part of the agreement in the confidence that the other party would do the same, if the latter should refuse, it would be a fraud on the former to suffer it to be done to his prejudice. By this simple rule, it would be fraud in *Rector* to let *Keatts* get into possession, under parol contract, by part performance, and then betray the confidence of *Keatts* by refusing to complete the contract, by which he is entitled to the possession of his place.

The court, therefore, properly overruled the plea. The Statute being insufficient as a defence, and so adjudged, it was improper to incorporate it into his answer. The court determined correctly in maintaining the exceptions to his answer; and refusing to amend, he had certainly no answer in court. Upon refusal to amend the answer, the court were authorized, (see 8 *Campbell Dig. p.* 110,) to proceed forthwith to a decree, and did so.

Exceptions to a decree go only to errors on the face of the decree. See 3*d Vol. Williams,* 371; 2 *Atkyns* 177, 533, 3*rd* 27, 809. There are no errors apparent on the face of the decree; therefore the court correctly overruled them. Pope was not a necessary party. He had made a deed to *Keatts,* and had divested himself of all interest. If he should be made a party, it should be done by the defendant alone; for it is not material for the claim of *Rector,* that Pope should be a party

All parties who are materially interested ought to be made parties. 2 *Bibb,* 184; 2 *Marshall,* 545.

Pope holds no title, and has no interest; and therefore was not a necessary party.

And at the present term, the court having requested the counsel to furnish a brief of the authorities on the subject of part performance;

404 and what relief other than the particular relief, could be granted under the prayer for general relief.

CUMMINS & PIKE filed the following:

We contend in this case that all the rights of *Keatts* to any part of the premises in question, rest upon the parol agreement between him and *Rector*. That *Rector*, when the land was struck off to him, and a memorandum made thereof by the auctioneer, had a title to the land, within the Statute of Frauds. See *Sudg. on Vend.* 76, 77; *Emmerson* vs. *Heelis*, 2 *Taun.* 38; *White* vs. *Rector*, 4 *Taun.* 209; *Kenrys* vs. *Proctor*, 3 *Ves. & Bea.* 57.

If the deed had been made to *Keatts* by Governor Pope, without the parol agreement between *Keatts* and *Rector*, the deed would have been of no avail. Should *Rector* now file his bill against Governor Pope, or whomsoever might be the proper party, for title to the whole tract, and set up the facts, (which the bill in this shows to exist,) that he was the purchaser at the sale, and that he was so noted by the auctioneer; and making *Keatts* a party, pray for the cancelling of the deed to *Keatts*, it would not be enough for *Keatts* to produce the deed, but he would be compelled to fall back upon the parol agreement, and show that *Rector*, being in law the owner of the land, had waived and transferred his right to *Keatts* by parol,—by this agreement, the whole of which we now attempt to enforce. *Rector* has performed his part, by permitting *Keatts* to take the conveyance in his own name. *Keatts* holds under, and has received the whole benefit of the parol agreement, and we contend that there is such a part performance as takes the case out of the Statute. Suppose *Rector* were to file such a bill as we have mentioned. Could *Keatts* set up the parol agreement? Of course—and if so, we can do it, and are entitled to have it enforced throughout.

Having premised so much, we proceed to refer the court to the authorities upon the subject of part performance:

For the general doctrine, the court is referred to, *Roberts on Frauds*, 140, 153, 162; 1 *Maddocks*, 363, 381; 2 *Hov.* 3; 1 *Sugden on Vendors*, 133, 145, 151; *Fonbl.* 182; 2 *Story's Eq.* 62, 76, 740; *Gunter* vs. *Halsey*, *Amb.* 386; *Hollis* vs. *Edwards*, 1 *Vern.* 158; *Walker* vs. *Walker*, 2 *Atk.* 100; *Owen* vs. *Davis*, 1 *Ves.* 85; *Seton* vs. *Slade*, 7 *Ves. Jr.* 265; *Hawkins* vs. *Holme*, 1 *P. Wms.* 771; *Wills* vs. *Stradling*, 3 *Ves.* 378; *Lacon* vs. *Mertins*, 3 *Atk.* 1; *Butcher* vs. *Stapely*, 1 *Vern.* 363; *Clerk* vs. *Wright*, 1 *Atk.* 12; *Buchmaster* vs. *Harriss*, 7 *Ves.* 341: *Allsop* vs. *Patterson*, 1 *Vern.* 472; *Pyke* vs. *Williams*, 2 *Vern.* 455; *Hales*

vs. *Vanderheem*, 2 *Vern.* 617; *Taylor* vs. *Beech*, 1 *Ves. Sen.* 297; *Potter* vs. *Potter*, 1 *Ves. Sen.* 441; *Legal* vs. *Miller*, 2 *Ves.* 299; *Lindsay* vs. *Lynch*, 2 *Sch. & Lef.* 1; *Davis* vs. *Hone*, 2 *Sch. & Lef.* 347; *Hamett* vs *Yielding*, *Ib.* 548; *Legh* vs. *Haverfield*, 2 *Ves. Jr.* 452; *Clinan* vs. *Cooke*, 1 *Sch. & Lef.* 41; *Frame* vs. *Dawson*, 14 *Ves.* 386; *Forster* vs. *Hale*, 3 *Ves.* 712; *Calcraft* vs. *Roehick*, 1 *Ves. Jr.* 221; *Atts. Gen.* vs. *Day*, 1 *Ves. Sr.* 219; *Boardman* vs. *Mostyn*, 6 *Ves.* 470; *Cooth* vs. *Jackson*, 6 *Ves.* 27; *Prodie* vs. *St. Paul*, 1 *Ves.* 333; *Phillips* vs. *Thompson*, 1 *J. C. R.* 131; *Parkhurst* vs. *Van Cortlandt*, 1 *J. C. R.* 273; 14 *J. R.* 15; *Viren* vs. *Belknap*, 2 *J. R.* 587; *Morphett* vs. *Jones*, 1 *Swans.* 172; *Davenport* vs. *Mason*, 15 *Mass.* 85; *Ebert* vs. *Wood*, 1 *Bin.* 216; *Syler's lessee* vs. *Echhart*, *id.* 378; *Billington's lessee* vs. *Welsh*, 5 *Bin.* 129; *Smith* vs. *Patton's lessee*, 1 *Serg. & R* 80; *Thompson* vs. *Todd*, 1 *Peters*, 330; *Gordon* vs. *Gordon*, 3 *Swans.* 442 *Exparte Hooper*, 19 *Ves.* 479; *Harris* vs. *Knickerbocker*, 3 *Cowen* 638.

As to granting, under the prayer of general relief, a particular relief, different from that prayed for, see *Palk* vs. *Clinton*, 12 *Ves.* 48; *Cook* vs. *Martyn*, 2 *Atk.* 2; *Grimes* vs. *French*, 2 *Atk.* 141; *Hiern* vs. *Mill*, 13 *Ves.* 120; *Bailey* vs. *Burton*, 8 *Wendell*, 353; which establish the principle that any relief may be granted under the general prayer, which is not inconsistent with the facts stated in the bill.

LACY, *Judge*, delivered the opinion of the court:

The first question presented for our consideration is, was the appeal rightfully allowed?

The right of appeal from an inferior to a superior Jurisdiction, is an absolute and unqualified right; provided the party taking up it brings himself within the provision of the law regulating the practice in such cases.

The question then recurs, when is a decree in chancery to be considered final? It is certainly conclusive and final, when the judgment of the court is pronounced, disposing of the whole matter in controversy, and the time at which the judgment was rendered has in reality, passed by. The law then affixes to the decree the seal and sanctity of truth, and constitutes it a complete judicial record; which can neither be set aside, or in any manner altered, or obliterated, except for fraud, or for some clerical misprison, apparent upon the face of the decree; or some new equity which has been discovered since the trial, and which by due diligence the party could not have availed himself of, before the cause came on to be heard. After the time at which the

LITTLE ROCK,

Jan'y 1839

KEATTS
*vs.*
RECTOR.

LITTLE
ROCK,
Jan'y 1839

KEATTS
*vs.*
RECTOR.

decree is given has expired, neither the court that pronounced it, nor the parties that are bound by it, have any right or authority to change, or in any manner alter, the record. The decree may be reversed by a superior tribunal, having competent jurisdiction of the matter; but the record itself stands entire and perfect, as it was when it was first made, and must ever remain so, as long as the public documents of the country are preserved from mutilation or destruction.

By the 5th section of the act of the Legislature passed 22d of January, 1816, it is declared, " after a decree is made the party shall have till the third day of the next term, to show cause why it shall not stand, at which time, if no cause is shown, *it shall be considered final and ready for execution;* but if the defendant will show cause, on or before the third day of the next term, he shall at least one month before the commencement of the term, leave a copy of his objections with the opposite party, or his solicitor; and if the objections are allowed, the court shall correct the error, and enter the decree, or otherwise dispose of the cause at the same time." See *Arkansas Digest*, *p.* 116

In the case now under consideration, it is evident that the exceptions were taken to the decree after it was entered, and one month before the commencement of the next succeeding term, at which they were returnable; and that a copy of them was regularly served on the solicitor of the defendant, agreeably to the requisitions of the Statute.— The exceptions upon the hearing were adjudged against the defendant, and he now claims the right of appeal from the decision. In determining this point, we must look at the Statute, and be governed by it. We have found no little difficulty in endeavoring to reconcile their provisions with the well known and long established principles of chancery practice; and after all we are free to admit that there is much seeming contradiction in the matter.

That a judgment or decree is final when it concludes the whole matters of the cause, and the time at which it was pronounced, has expired, is certainly and unquestionably true; and it must so be considered as against the whole world, upon the clearest principles of reason and the highest weight of authority. But under our Statute, as against the party who is the defendant in the cause, *it is not final or ready for execution,* if he excepted to the decree on or before the third day of the next term. *Quoad hoc as to him,* the right of appeal remains suspended till that time by the express words of the act, and the clear

and manifest design and intention of the Legislature.   To give to the LITTLE ROCK, Statute any other rule of interpretation would be to abridge an in- Jan'y 1839. valuable right, instead of enlarging it, and might be the means of not KEATTS only deceiving and misleading the defendant, but seriously affecting *vs.* RECTOR. his interest, without any fault or laches of his own.   This court would not be warranted in putting a strict and rigid construction on the cause in question; for if they did, it might, and probably would ope- rate most prejudicially against the right of appeal; and besides, it is expressly declared in the act, that the party against whom the decree is entered shall have the right of exception at any time, on or before the third day of the next term, and at the term to which the exceptions are returnable they shall be heard, and the errors corrected, or the cause otherwise disposed of.   These injunctions are clear and peremptory, and the court is bound to obey them.   The record shows that the de- fendant has complied strictly with the requisitions of the Statute; and consequently, as that does not consider the decree *final and ready for execution*, till the exceptions are disposed of, the defendant in this case is entitled to the full benefit of his appeal.   In prosecuting his ap- peal, the defendant will be confined to the exceptions taken to the de- cree below, and will not be permitted to travel out of them; for if there were any other errors in the decree, by not pointing them out, he is presumed to have waived them; and of course it is now too late to take advantage of them in this court.   The exceptions that may be taken to a decree are in their nature and consequence an argument for the rehearing of the cause, and they have for their design and end the readjudication of the whole matter.   While the party excepting in the court below will be confined strictly to his exceptions in this court; still those exceptions may go to the whole equity of the case; and if they do, we are bound to open the decree, and give such a judgment as the court below ought to have given.   To restrict the de- fendant in his objections to errors upon the face of the decree, would be in effect to defeat the will of the Legislature, as well as the design and object of the exceptions themselves.   A decree may be perfectly fair and just on its face, (and in fact most decrees are generally so), but the errors complained of lie behind it, and it is the false conclusions and premises that produce it, that the defendant is generally desirous of correcting and remedying by his exceptions.

We will now examine the exceptions taken to the decree below, and dispose of them in the order they are presented.

LITTLE
ROCK,
Jan'y 1839

KEATTS
vs.
RECTOR.

The first exception is, that the decree states the defendant failed to amend his answer after the complainant's exceptions to its sufficiency were allowed; whereas, the exceptions only went to that part of the answer that set up the Statute of frauds and perjuries as a defence; and it was only that part of the answer that was adjudged insufficient, or to which the exceptions were sustained.

It is admitted that the record shows such a state of case; but how does that establish the fact that the decree was erroneous or illegal? How does such a case affect the merits of the case? The decree only states by way of recital, that the defendant did not amend his answer. The record supports that fact; for although the exceptions were only taken to that part of the answer set up the Statute of frauds and perjuries as defence, and only to that extent allowed; still the defendant, so far as appears from the pleading, did not amend his answer in that particular.

The second exception taken is, that the cause came on for final hearing on the bill and depositions; whereas, it was never set down for final hearing at all, either on the bill, depositions, or otherwise.

In what manner does this exception controvert the justice or equity of the decree? The Circuit Court in rendering the decree, evidently proceeded on the ground, that if an answer was adjudged insufficient as to a part, that the defect vitiated the whole answer; and therefore the cause is said to come up on the bill and depositions, and the bill is considered and taken as confessed; for it is imagined by the court below that there was no legitimate answer in the case. How far this opinion is right or wrong, this court will not at present determine. But in the course of investigation there will be an opportunity afforded of testing the matter, and the question will then be decided.

It is very clear that the cause was never set down for hearing by either party.

The third section of the act regulating the practice in courts of chancery, contains this provision, "after a cause is set for hearing, it shall not be heard till next term, and then it shall be heard, or as soon after as possible." See *Ark. Dig. p. 116.*

What is the effect of this provision? Is it mandatory to the court to set the cause for hearing before the case be tried? and is such an order necessary for the purpose of giving them jurisdiction and authority to hear and determine the case? The act does not declare how, or

in what manner the cause shall be set for hearing; nor does it define whose duty it is to set it down.    To say that the direction to set the cause shall be absolutely binding on the court, and to make all its authority turn upon that simple point, would be manifestly inconsistent with the other provisions of the Statute, and absurd in itself; and therefore such a rule of construction cannot be admitted or allowed.    The true interpretation of the clause is, that it is intended to be directory to the parties themselves, in order to prepare for trial and prevent surprise.    If the parties proceed to trial, and neither object in the court below that the cause was not set for hearing, it is too late when it comes here, for the first time, to raise the objection.    Besides, having failed to object at the proper time, and before the proper tribunal, the presumption is, that the objection was waived, and the parties by consent proceeded to the trial.    The presumption becomes full and positive when it is borne in mind, that the parties in this instance have expressly agreed in the record, that no advantage shall be taken for any informality or irregularity in the proceedings.    This objection to the decree, we therefore consider wholly untenable.

The third exception impeaches the decree on the ground that it states that the complainant tendered to the defendant one half of the purchase money, with interest, and also one half of the value of the improvements put upon the land, and that that amount was deposited in the clerk's office; whereas, the record presents no such state of case. There is some slight mistake in the exception; for the bill states a tender, and one witness goes far to prove it.    Besides the decree affirms on its face, that a deposite was made, and that is certainly a record of the fact; whether true or conclusive is a wholly different matter.    Take the case, however, as it is intended to be presented by the exception, and what does it amount to?    Why simply to this: that the complainant is not entitled to relief, unless he first make a tender or deposite of one half of the purchase money, with interest, and a sufficient sum to cover one half of the improvements.    We are by no means prepared to admit the truth of the proposition; but be that as it may, such an enquiry is wholly foreign to the question now before the court, and we shall of course pass it by.

The fourth exception questions the validity of the decree, in stating that the allegations of the bill were fully proven by the depositions. This objection will be treated in examining the proof.    The fact that the court below considered that there was properly no answer in the cause;

LITTLE ROCK, Jan'y 1839

KEATTS vs. RECTOR.

s

and that the bill was taken as confessed is a sufficient reply for the present to the objection. Whether the record will justify such a conclusion or not, we shall see as we progress in the examination.

The fifth and sixth exceptions were the last that were assigned in relation to the decree, and they embrace any question of law, or of fact that can be properly raised upon the record; and they present the subject in a wholly different light, from the one in which we have been considering it.

Before the court proceed to take up, and dispose of these questions, it may not be amiss to state a few of the most prominent and general rules, that prevail in courts of equity in regard to the pleadings.

The entire jurisdiction of courts of equity is assumed upon the ground that when the common law, by reason of universality, cannot afford the injured party adequate and complete redress, courts of equity step in and supply the defect by administering such relief. They do not profess to change or alter the rules of the common law, but to afford peculiar and appropriate remedies for each particular class of cases. The judgments or decrees of courts of equity are supposed to act on the conscience of the offending party, and to compel him to do what is right in the discharge of his obligations. Notwithstanding this, still there is as much accuracy and precision required in their pleadings as in courts of common law. The rules themselves are doubtless far more liberal and comprehensive in their character, and in many respects infinitely more just and equitable; but they are not on that account less obligatory upon the parties or the court. For if the rules of proceeding in courts of equity were mere arbitrary and capricious regulations, then indeed might it be said, that equity resides alone in the breast of the judge, and that it was not founded in those immutable principles of moral and original justice, which are declared to be its true origin and aim. Having stated these general principles, we will now endeavor to apply them to the case before the court.

When the complainant has filed his bill for relief and called on the defendant to answer, he may come in, and either demur, plead, or answer to the bill. It is best and most advisable to put in his whole defence at one and the same time; but should the defendant not elect to do so, the court may give him leave to file his defence at different times, and so to amend his pleadings as will reach the true merits of the case. If the defendant elects to demur, plead and answer to the same bill, care must be taken that the plea does not cover the ground of the demur-

rer, or the answer that of the plea.    The object in giving the defend-
ant all these modes of defence, is, that his whole case may be brought
fully and fairly before the court.    A demurrer only extends to the facts
or charges made in the bill, as appears on its face, and admits them to
be legally true, if rightly pleaded.    A plea may also reach the same
facts, and take issue on them, or it may aver any other new matter *in
pais*, and plead it in bar of the equity of the bill.    An answer is a
response to all the material allegations of the bill, and either admits
or denies them in whole or in part; or it may set up any new matter
by way of defence to defeat or avoid the complainant's equity.

The defendant is always presumed to understand his own case, and
to know in what manner it is best to insist on his defence.    When he
has made his election, how and in what manner he will defend, he is
concluded by his own acts, and will not be permitted to deny or tra-
verse them, or avoid their legal consequence.    And in this instance
courts of equity and courts of law adopt the same rules of practice,
and proceed upon the same reasoning.

If these positions be true—and that they are cannot be doubted, for
they stand upon the highest ground, both of reason and authority—
then it necessarily follows, that the decision of the court below, in sus-
taining the exceptions to the defendant's answer, was correct.    The
exceptions only went to the part of the answer which again set up the
Statute of frauds and perjuries as a defence; and which, in the first
instance, was pleaded in bar of the equity of the complainant's bill.—
The answer covered the exact ground that was occupied by the plea,
so far as it attempted to bring the same subject matter before the court;
and consequently that part of the answer was properly ordered to be
stricken from the rolls.

But does it necessarily result that because an answer has been
adjudged insufficient in part, that therefore the whole answer is vitiated
and annulled?    The court in entering up the decree evidently
proceeded upon this principle, for the decree on its face shows that
the court below considered that there was no legitimate answer re-
maining on file.    Is that opinion correct and in conformity to the prac-
tice and proceedings in courts of chancery?    It certainly is not: an
answer may be good in part, and defective in part; and its insufficien-
cy can never be made so to operate as to destroy that portion of it
which is valid in itself, and which, if true and properly pleaded, may
be a complete response or denial of the equity of the bill.    For what

LITTLE
ROCK,
Jan'y 1839

KEATTS
vs.
RECTOR.

is an amended answer, but an answer appendant to the original and connected with it, and forming a part of the original. Again—why put the party to the expense and costs of pleading the same matter over again in an amended answer, when, if it was properly set forth in the original answer, it fully met and controverted the allegations in the bill. The authorities upon this subject are clear and explicit, and can neither be controverted or denied. Lord Redesdale remarks that a " further answer is considered in many respects as similar to, and forming a part of the first answer. Again—that if the exceptions taken by the master to the answer for insufficiency be sustained," then the defendant must answer again to those parts of the bill in which the master conceives the answer is insufficient; or he must except to the master's report, and bring the question of the insufficiency of the answer before the court: thereby clearly showing, that it is only to those parts which are deemed insufficient, that the defendant is compelled to amend his pleading. See *Mitford Pl.* 225; *Story on Equity Pl. from p.* 591 *to* 665, 6 & 7; *Beams' Treatise on Equity Pleading*.

How far this mistake, or the error in the court, will affect the merits of the case, we shall in the sequel of this examination determine.

It will be seen from an inspection of the record, that the defendant first interposed his plea of the Statute of frauds and perjuries, and after that was adjudged against him, he then put in his answer, setting up in part of it the same defence, which was ordered stricken from the rolls; and finally set up new matter in his answer by way of avoiding the equity of the bill. By pleading over in his answer, he took issue upon the equity of the bill, and staked his cause upon that point.

After voluntarily withdrawing his plea and answering over, he has no right to claim any benefit that he might otherwise have derived from the judgment of the court in overruling his plea. The court could not rightfully return and examine the question, either of law or of fact, put in issue by the plea; for the defendant himself had voluntarily waived and withdrawn his plea. It necessarily results from these plain and important principles, that the defendant had no longer any right to insist on the Statute of frauds and perjuries, as a defence to the complainant's cause of action, in his answer. The case then properly stands on the mere equity of the bill, answer and depositions; and this court might proceed to consider and determine it alone upon the questions presented by that state of pleadings.

Legitimately speaking, the plea of the Statute of frauds and perjuries is not before us, and therefore it would be entirely proper to determine the cause independent of it.

But as the question presented by the plea is of vital interest and importance to the whole community, we are disposed to consider and determine, whether a part performance of a parol contract on the sale of lands will take the cause out of the Statute of frauds and perjuries. In deciding this question, we shall give the defendant the full benefit, not only of his plea setting up the Statute, but also whatever advantage he can derive from the answer, and the proof in the case.

And when we have gone through the whole subject, we shall have disposed of the entire equity of the case.

The Statute declares " no action shall be brought whereby to charge any executor or administrator, upon any special promise to answer for any debt or damage out of his own estate; or whereby to charge the defendant upon any special promise to answer for the debt, default, or miscarriage of another; or to charge any person upon an agreement made in consideration of marriage; or *upon any contract for the sale of lands, tenements, or hereditaments, or any interest in or concerning them*; or any lease for a longer term than one year from the making thereof; *unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, signed by the party to be charged therewith; or by some other person by him thereunto properly authorized.* See *Arkansas Dig. p.* 135, *sec.* 1.

This section is an exact and literal copy of the 4th Section of the celebrated Statute of 29 *Charles* II, *C.* 3; and therefore the decisions of the English courts upon it are entitled to great weight and authority.

At common law every contract for the sale and transfer of property where there was no actual delivery, was treated as a personal covenant; and as such, if it was not performed by the party making the agreement, no redress could be had except in damages. This was in effect to allow the party in all cases, either to perform his covenant, or pay damages for the breach of it. See *Story's Commentaries on Equity,* 21, *sec.* 714. The non-performance of an agreement upon a valid consideration, is a clear violation not only of a legal, but of a moral and equitable duty; and hence courts of equity have interposed their authority, and compelled the offending party to perform specifically his contract. They proceed upon the principle, that whatever

LITTLE
ROOK,
Jan'y 1839

KEATTS
vs.
RECTOR.

a party stipulates to do, in good faith and conscience, he is bound to perform; and if he fails to do so, he is guilty of injustice and wrong, for which an adequate and full compensation ought to be given. It is because courts of law cannot afford this relief, that the jurisdiction of courts of equity attaches; and that jurisdiction, if not coeval with the common law itself, extends to a very remote period of time, and is now in daily and constant operation for the most useful and beneficial purposes. *Story*, 23; *Madd. Ch. Pr.* 287; *Fonbl. Equity*, B. 1, C. 1.

Where, therefore, the party wants the thing in specie, and he cannot be fully compensated at law in damages, courts of equity will grant him a specific performance. *Bettsworth* vs. *Dean of St. Paul, Sel. Cas. in Ch.* 68, 69. And this constitutes the true and leading distinction in the exercise of equity jurisdiction in decreeing a specific performance; because damages at law, in the particular case, cannot afford complete and adequate redress. There can be no reasonable objections in allowing the party aggrieved by a breach of contract, to have an election, either to take damages at law, or to have a specific performance in Equity: "The remedies being concurrent, but not coextensive with each other." It was so expressly ruled in *Hasley* vs. *Grant* (13 *Ves.* 76, 77); and *Alley* vs. *Deschamps*, (13 *Ves* 228.)— It is a general rule, that courts of equity will not decree a specific performance of a mere chattel interest. But when this is the case, the courts go upon the ground, that there is not a particular nor intrinsic value attached to the chattel, and of course the like article can be purchased in the market; and if there is a breach of the contract, full and adequate compensation can be recovered in an action at law.— But whenever the thing itself possesses peculiar excellence or value, and the owner cannot at law be fully compensated; then the courts of equity interpose and decree a specific performance—such, for instance, as a covenant for a lease, a contract for the sale of a valuable secret in trade. And in like manner, covenants between landlord and tenant, when injunctions in the nature of a specific performance often are decreed to stay waste. *Furnival* vs. *Crew*, 3 *Atkyns*, 83, 87; *Fulton* vs. *Foot*, 2 *Bro. Ch. R.* 636; *Buxton* vs. *Lister*, 3 *Atkyns*, 381; 2 *Ves.* 629; *Bricket* vs. *Bolling*, 2 *Munf.* 442.

Even in regard to bank stock, a specific performance is sometimes decreed in equity. *Forrest* vs. *Elwes*, 4 *Ves.* 479.

In cases of covenants and other contracts where a specific execution is sought, it is often material to consider how far the obligations of the

parties are mutual and reciprocal; and whether the party seeking relief has fairly and equitably performed his part of the agreement. All contracts to be binding must be mutual, though the obligations they impose may be independent of each other, and in some respects essentially different.

Formerly it was the practice to send the party to law, for a breach of his contract; and if he recovered any thing by way of damage, then the courts of chancery entertained jurisdiction of the case: otherwise they dismissed the bill. 1 *Fonbl. Eq. B. 1 C. & note 5; Dodsley* vs. *Kinnersly, Ambler, R.* 401; *Normander* vs. *Duke of Devonshire,* 2 *Freem.* 217; *Jeremy on Eq. Jurisd. B.* 3; *Madd. Ch. Pr.* 288.— Hence it was said, no suit could be maintained in equity, unless an action at law would lie for damages. This opinion was subsequently overruled in *Carnal* vs. *Bucke,* and in that case Lord Macclesfield denied the existence of the rule altogether. And the doctrine may now be considered well settled, that damages may sometimes be recovered at law, where a court of equity would not decree a specific performance; and on the other hand, damages might not be recoverable at law, and yet equity might interpose and decree a specific execution. *Weale* vs. *West, Mid. Waterw. Comp.* 1 *Jac. & Walk. R.* 370.

"In truth," says Justice Story, "the exercise of this whole tract of equity jurisprudence, respecting the rescision or the specific performance of contracts, is not matter of right in either party, but a matter of sound and reasonable discretion in the court, which governs itself as far as it may by general rules and principles; but which at the same time withholds and grants relief, according to the circumstances of each particular case, when these rules and principles will not furnish any exact measure of justice between the parties."

Courts of equity are in the habit of interposing to grant relief in cases of contracts respecting real property to a far greater extent than in cases respecting personal property. Not upon the ground, as as is sometimes alleged, of an intrinsic distinction between real and personal property, though that may be entitled to some consideration; but upon the ground, that in contracts for personal chattels the injured party, if the covenant is not specifically performed, may generally be amply compensated in damages. Whereas it often happens that the locality, character, and properties of the sale, give to real estate a peculiar and special value; and therefore a compensation in damages would furnish to the purchaser no adequate relief for the loss or depriva-

LITTLE
ROCK,
Jan'y 1839

KEATTS
vs.
RECTOR:

tion. *Story* 51; *Aderley* vs. *Dickson*, 1 *Sim & Stu.* 607. And in cases affecting real property courts of equity have administered relief to a party who has acted fairly, but negligently. *Lennox* vs. *Napple*, 1 *Sch. & Lef.* 684. "They will never interfere to decree a specific performance, except in cases where it would be strictly equitable to make such a decree."

If in any case the parties should so deal with each other in relation to the subject matter of the contract, that the intention of the one party is defeated, while that of the other is carried into effect; and if the case itself shows that there is such a state of case, as that one party may enforce, and the other cannot, courts of equity will decree a specific execution of the contract. With these general principles in view, we will now proceed to consider the object and intention of the Statute of frauds and perjuries.

The title of the act of 29 *Charles*, 11 *C.* 3; of which ours is a literal copy, declares it is to prevent the fraudulent setting up of pretended agreements, and then attempting to support them by perjury. Besides, there is much wisdom and sound policy in that clause in the Statute, which requires all contracts in relation to the sale of land to be in writing. To trust so high and important an interest to the uncertain and fleeting memory of man, is in many, if not in most cases to put to hazard that interest, and to expose both witnessess and parties to greater temptation than human virtue can ordinarily resist.

It is greatly to be regretted that courts of equity ever interposed their power to take a particular class of cases, of part performance, out of the operation of the Statute; for in so doing, they have virtually repealed it, and have established a rule of construction, not in subordination to the act, but in direct conflict with its authority, and its most important and salutary provisions.

In this sentiment we are fully sustained by the whole judiciary of our own country, as well as that of Great Britain. But notwithstanding this, courts and judges have still gone on to decree specific execution; for they consider themselves bound by the doctrine as established, and have yielded to it implicit obedience, though they have often expressed much solicitude to see the rule changed by those who are competent to do so. This court does not consider itself at liberty to disregard the whole current of English and American decisions that have been made upon the Statute, however much they may question the policy or the propriety of their adjudications. As the law is written

LITTLE
ROCK,
Jan'y 1839

KEATTS
vs.
RECTOR

and expounded, so they must take it, and it is their duty to follow its precepts, and obey its authorities; and not to set up their imperfect and solitary opinion against the deliberate opinion of centuries.

Courts of equity are as much bound by the Statute as courts of law, and therefore they are not at liberty to dispense with its provisions.—— That they do interfere, and sometimes dispense with what may appear its plain and obvious meaning, cannot be disguised or controverted; but then they do so on the ground of protecting the equities subservient to the Statute, and independent of it. For instance, courts of equity will never enforce the specific performance of a parol agreement, in relation to the sale of land, where the contract is set forth in the bill, and admitted by the answer; and the reason given for the decision is, that the Statute was designed to guard against fraud and perjury, and in such a case there is no danger of it. Another reason is, as the party has not thought proper to avail themselves of the benefit of the Statute, it may fairly be presumed, he intended to waive it. The case is then considered as taken entirely out of the mischief intended to be prevented, and of course out of the operation of the Statute. *Story* 755; *Attorney General* vs. *Day*, 1 *Ves.* 221; *Lacon* vs. *Mertins*, 3 *Atk.* 3. Courts of equity will enforce the specific performance of a contract within the Statute, when the parol agreement has been partly carried into effect. The distinct ground upon which they interpose in cases of this sort, is, that one party would be able to perpetrate a fraud upon the other; and it could never have been the intention of the Statute to suffer one party to commit a fraud on the other with impunity. Indeed in all cases fraud vitiates the most solemn acts and conveyances; and in the case of *the Attorney General* vs. *Day*, it is said that the objects of the Statute are promoted instead of being suppressed by such a jurisdiction for discovery and relief. " And it is obvious, where one party has executed his part of the agreement, in confidence that the other party would do the same, if the latter should refuse, it would be a fraud on the former to suffer it to be done to his prejudice." *Buckmaster* vs. *Harrop*, 7 *Ves.* 347; *Hawkins* vs. *Holmes*, P. *Wms.* 770; *Wells* vs. *Sahdling*, 3 *Ves.* 378; *Marpeth* vs. *Jones*, *Swanst. R.* 181; *Fonbl. Eq. B.* 1 C. 38, and *Gilb. Lex. Pretoria, p.* 239, 240; *Clinan* vs. *Cook*, 1 *Sch. & Lcf.* 22.

The enquiry still remains, what constitutes such part performance of the agreement, as will take the case out of the reach of the Statute? In the application of the rule the difficulty lies, and it is that we shall

LITTLE
ROCK,
Jan'y 1839

KEATTS
vs.
RECTOR.

now attempt to solve.   Nothing can be considered as a part perform-
ance, that does not put the  party in such a situation that a fraud can
be  perpetrated upon, him, unless the  agreement can be  specifically
enforced.    For instance, if, upon a  parol agreement, a man is put in
possession of land, he is made  a trespasser and liable  for damages as
such, if there be no agreement valid in law or equity.    In *Foxcraft* vs.
*Lester*, (*Prec. Ch.* 71, 519,) and in *Pengal* vs. *Ross*, (*Eq. Abr.* 46, *Pl.*
12,) it is declared for the purpose of the party defending himself against
the charge as trespasser, and to account  for the profits in such a case,
the evidence of a parol  agreement is admissible for his  protection;
and if admissible for such a purpose, there seems to be no reason why
it should not be admissible throughout.    A  case still more cogent
might  be put where a vendee, upon a parol agreement for  a sale of
land should proceed to build a house  on the premises in confidence of
the completion of the contract.  In such a case there would be a man-
ifest fraud, if the vendor was permitted to escape from a strict fulfilment
of his contract.    This doctrine is expressly recognized and established
in *Whitmore* vs. *White*, *Caines Cas. in Er.* 87, and  *Parkhurst* vs. *Van
Cortlandt*, 14 *John. Rep.* 15—and in such  a number and variety of
other cases as put the question finally to rest, and beyond all dispute.

In order to make the acts such as a court of equity will deem part
performance of a contract, it is essential that they should clearly ap-
pear to be done solely with a view to the contract being performed.
For if they are acts that might have been done with other views, they
will not take the case out of the Statute.    *Gunter* vs.  *Halsey*, *Ambler*,
536; *Phillips* vs. *Thompson*, 1 *John. Ch. R.* 149; *2 Ves.* 456.    There-
fore, giving an abstract of the title, going to view  the estate, making
out deeds of conveyance, and  the like, do not constitute such a  part
performance, as will take the  case out of the Statute; for they are
acts of an equivocal and doubtful character.    But acts that are clear,
certain, and definite in the object and design, and which refer exclu-
sively to the completion of the agreement, of which they constitute a
part execution, will take the case out of the operation of the Statute.
*Hawkins* vs. *Holmes*, 1 *P. Will.* 770; *Pembroke* vs. *Thorpe*, 3 *Swanst.*
437; *Clark* vs. *Wright*, 1 *Atk.* 12; *Cooth* vs. *Jackson*, 6 *Ves.* 14;
*Sugden on Vendors*, *Ch.* 3, *p.* 104, *Cioke* vs. *More*, 1 *Com. R.* 219.

Mere possession of the land, if obtained wrongly, and wholly inde-
pendent of the contract, will not be deemed part  performance of the
agreement.    But if possession be delivered and obtained solely under

the contract, and in reference exclusively to it, then the possession will take the case out of the Statute; and especially will be held so to do, where the party has made repairs or improvements. And in such a case, not to decree specific performance would be to practice a fraud upon him. *Butcher* vs. *Stapeley*, 1 *Vern.* 365; *Pyke* vs. *Williams*, 2 *Vern.* 455.

<span style="float:right">LITTLE<br>ROCK,<br>Jan'y 1839.<br>KEATTS<br>*vs.*<br>RECTOR.</span>

Another class of cases is, where the party seeking relief has been placed by the contract in such a situation that he cannot be put in *statu quo* without injury, by reason of performing his part of the agreement; and whenever that is the case, courts of equity will interfere for the purpose of preventing a fraud, and decree a specific execution. If this was not the case, courts of equity would permit the forms of the law to be made instruments of injustice for the unconscientious purpose of committing a fraud upon a confiding and innocent person. *Merideth* vs. *Wynn*, 1 *Eq. abr.* 75, s. c. *Prec. Ch.* 312; *Adderly* vs. *Dickson*, *Sim. & Stu.* 607; *Story*, 82, 351.

The application of the principles here stated will test the case now under consideration.

By reference to the bill it will be seen that the plaintiff stakes his whole equity upon the following allegations: 1st, That he was the original purchaser of the land in controversy. 2nd, That the deeds were made out in his name, and subsequently changed and cancelled, and others executed by the Governor to the respondent, at his special instance and request. 3rd, That the deeds on their face, although absolute, were only to be considered as a mortgage or lien upon the property for his part of the original purchase money and interest. 4th, That the defendant purchased from him, and that he took possession under, and by virtue of the sale made to him by the complainant, and went on and improved the property in consequence of such sale. 5th, That he always admitted and allowed that the land was the joint and equal partnership property of himself and the complainant, and so treated and spoke of it up to a short time previous to the institution of this suit: all these allegations are fully and substantially proved by the depositions in the case.

F. A. McWilliams, who acted as auctioneer in the selling of the land, proves that it was bid off by *Rector*, and that the deeds and notes were drawn by him in *Rector's* name, and afterwards cancelled, and other deeds executed to *Keatts*; and that *Keatts* agreed to take half of the purchase from *Rector*, and to become equally interested in the

LITTLE
ROCK,
Jan'y 1839

KEATTS
vs.
RECTOR.

land, upon the express condition that he would pay in the first instance all the purchase money; and that *Rector*, for the advances thus made, should refund his part back with interest from the time of payments; and that *Keatts*, on the execution of the contract, and the reception of the deeds to himself from the Governor, took possession of the land, and has held it ever since, and that the witness often heard both of the parties say, that they were joint and equal owners in the property, and that *Keatts* always so treated and considered it, until a short time before the beginning of this suit. Samuel M. Rutherford also proves the contract, possession, and the manner of taking it; and that both complainant and defendant always told him they were jointly interested in the land; and that the fact of their joint ownership was a matter of public notoriety; and the witness was present when the deeds were made to *Keatts*, and that they were changed at the suggestion and special request of *Rector;* and although absolute upon their face, it was expressly agreed between the parties that they should in no way affect or alter their joint and equal interest in the land, and they were only taken in *Keatts'* name for the purpose of securing him in the payment of the purchase money he had advanced for *Rector.* The depositions of Field, Cotter, Thorn, and Gould establish all the essential parts of the contract as set forth in the bill; and the answer itself, although it denies it in terms, does, in effect and in substance, admit all the facts that are necessary for the complainant, if he is entitled to relief. It considers the contract that the defendant made with the complainant, in the first instance, not binding; because the complainant did not pay one half of the purchase money; and as the defendant paid the whole amount, and the deeds were executed to him, he therefore claims to be the sole purchaser from the Governor, and entitled to all and every interest in the purchase. This is a legal conclusion, and does not materially contradict the charges of the bill. Whether right or wrong will be shortly determined. The answer in express terms admits that, in the first place, *Rector* bid off the land, and of course was the lawful purchaser; that the parties agreed to take the land jointly and equally upon speculation; that the defendant went in possession, upon the execution of the deed, and has continued his possession ever since, claiming it as his own property; and that it was not until the complainant failed to comply with his part of the agreement, that the defendant deemed the purchase of the property no longer a joint purchase, but accruing and appertaining to

him solely and alone in his individual capacity.  These facts are set up in the answer, and with the plea of frauds and perjuries constitute the respondent's whole ground of defence.

The only remaining question now to be decided, is, do the facts and and circumstances of the case prove such a part performance of the parol agreement, as will take the case out of the Statute of frauds and perjuries? or is the plea of that Statute a complete bar to the complainant's relief?  The facts relied on in the answer, and urged in argument, that the case falls within the operation of the Statute, are, that the defendant paid all the purchase money, and the complainant, if he originally possessed any equity, has failed to assert it in a reasonable time.  The last of these objections will be examined first.— It is true that courts of equity have regard to time, so far as respects good faith and diligence; but if circumstances of a reasonable nature have prevented a party from complying strictly with his contract; still if he has only acted negligently, and not culpably, his case will be treated with indulgence, and even with favor.  In this case, time constituted no part of the contract; and if it did, the complainant has performed in the first place his part of the agreement; and the defendant being secured by a lien on the land for the payment of the purchase money, he will not be permitted to allege that the complainant has lost his rights by failing to prosecute them in due season.— Besides, as the defendant never until recently claimed the land to be exclusively his own property; but on the contrary always admitted it to be the joint and equal property of himself and the complainant; and that being the case, the complainant has used a proper diligence in asserting his claim.  No adverse interest was set up to his right until August, 1835, so the bill alleges, and depositions prove; and having brought his suit the next succeeding year, certainly it cannot be contended he slept on his rights, or that time in this case is an essential and important enquiry in regard to the contract.  *Story*, 88, sec. 776; *More* vs. *Black*, 1 *B. & Beat.* 68, 69; *Newland on Contracts*, *Ch.* 12, *p.* 42 to 48.

Much reliance is placed on the fact, that the purchase money was paid by the defendant; and the complainant's bill must therefore be dismissed.  It was formerly held that the payment of the purchase money took the case out of the Statute; but this doctrine was for a long time in much controversy, and is now entirely overthrown, upon the ground that the money can be recovered back at law, and that the

case admits of a full and direct compensation in damages. *Story*, 65, 66. In *Buck* vs. *Buck*, Sir William Grant lays down the true rule on this subject. *Sugden on Vendors, Ch.* 353, *p.* 112.

The cases here cited are where the vendee is seeking for a specific execution, and as the contract is mutual, they certainly apply with as much force and conclusion in cases where the vendor is the injured or aggrieved party. If the vendee would not be entitled to a specific performance, merely on the ground that he had paid the purchase money, certainly he cannot protect himself from performing his part of the contract, where the vendor has executed his part in good faith, and where the very agreement set up for relief is, that the vendee was bound to pay the purchase money, and that was the moving consideration that induced the vendor to let him into the contract or purchase. Again—the defendant has full and adequate compensation at law, for the payment of the purchase money he has advanced.

This view of the subject seems to the court to be conclusive upon this point, and leaves the case to be decided on other grounds or considerations. In reference to the Statute, it must be conceded that the contract in this case is mutual, and that is equally binding on both parties, or it is obligatory upon neither. The present position of the contracting parties cannot change or alter the nature or character of the agreement. We will now attempt to test this agreement by reversing their situations, and see how far the Statute of frauds and perjuries would protect the complainant, if the deeds had been executed to him, and the defendant had still taken possession of the lands, and had erected valuable improvements. Suppose the complainant had brought his action of ejectment or trespass, and had attempted to distress him, or to have made him answerable in damages for the trespass, could he have succeeded in either action, if the defendant had proved on the trial that he came lawfully into possession under their contract and agreement; and that he was the joint and equal owner of the property? Would not a plea setting forth these facts bar the complainant's right of recovery? or would the Statute of frauds and perjuries be a good replication to it? The authorities are clear and conclusive upon the question. For to allow the Statute to operate in favor of the complainant, would in effect and reality enable him to perpetrate a fraud which the Statute was intended to prevent.

To illustrate this view of the subject still further, suppose, in this case, the complainant had been clothed with a legal estate, and the

LITTLE
ROCK,
Jan'y 1839

KEATTS
vs.
RECTOR.

defendant had brought his bill for a specific execution, would a court of equity have enforced the parol agreement? Most certainly they would. For the authorities conclude the question, and neither admit of contradiction or denial. They proceed upon the ground, that the possession and improvement are conclusive acts of part performance of the defendant's agreement, and not specifically to enforce the contract, would be to commit manifest injustice by permitting the complainant at his own election to perpetrate a fraud. The object and design of the Statute, was to suppress, not encourage fraud; and that being admitted, the case does not fall within the mischief intended to be remedied, and consequently is without the operation of the Statute.— Again—if courts of equity did not decree specific performance of such agreements, then not only might the party commit a fraud on another with impunity, but the Statute would be so made to operate, that the forms of the law would become instruments of injustice for unjust and fraudulent purposes. If *Rector* was vested with the legal title, and *Keatts* could enforce a specific execution, certainly it will be conceded, when the title is in *Keatts*, that *Rector* must have the same right to specific performance. Again—where did *Keatts* acquire possession, and under whom does he hold? Is his possession lawful or unlawful? He certainly acquired possession by his purchase from *Rector*, and the nature and character of that possession was never changed or altered by any subsequent contract. Then his contract or purchase from *Rector* put him in possession. That his possession is lawful, is evident; for he held under a valid deed, and was put in possession by the original and rightful owner. He could not then be treated as a trespasser by *Rector*, or any one else; neither could he in any manner be deprived of his possession. The fact that *Rector* admitted *Keatts* to take possession under the contract, and in virtue of it, and to continue that possession in an uninterrupted and peaceable manner up to the time of filing the bill, shows conclusively what was *Rector's* design and object in executing his part of the agreement. Is it to be supposed he would have let *Keatts* into the contract, or have suffered him to have taken the deeds in his (*Keatts'*) name, unless he had confidently believed the defendant would in good faith have performed his part of the agreement, and have conveyed to him one undivided moiety of the land? Would *Rector* have ever agreed to cancel his deeds, and procure others to be executed to *Keatts*, if *Keatts* had informed him at the time, that he did not consider the contract binding; and that while they seemed to be

LITTLE
ROCK,
Jan'y 1839

KEATTS
vs.
RECTOR.

joint and equal partners, that he (*Keatts*) was the only lawful and true proprietor of the land? Had he disclosed this fact, would *Rector* ever have permitted him to take an equal interest in the purchase?

Had the Governor authority to execute the deeds to *Keatts*, if *Rector* had not directed him so to do? Most assuredly not. The Governor possessed no such power for such a purpose. By the terms of the sale, all right and title had passed out of the grantor to the grantee. Neither had *Keatts* the right or authority to accept the deeds, but as coming through *Rector*, and acquired by him in virtue of his contract. Shall *Keatts* then be permitted to reap the reward and profits of *Rector's* purchase, and not render any adequate compensation for the benefit he may have received. Will a court of equity compel *Rector* to perform his part of the agreement, and at the same time deny him all manner of relief? How can he be placed in *statu quo*, in regard to the agreement, if he has no relief in equity, or the court refuses to decree him a specific performance? The land may possess a peculiar and intrinsic value in his eyes, and therefore he desires a specific performance. Be that as it may, if his acts of part performance take the case out of the Statute, he is clearly entitled to it.

If *Rector* had failed to comply with his part of the agreement, still he was liable for damages on the contract, or for a specific execution of it; and *Keatts'* remedy in whatever mode he might elect to prosecute it, could not have been defeated by setting up the Statute.— Suppose, for instance, the land had fallen, instead of having risen in value, and *Keatts* had sued *Rector* for his part of the purchase money, can it be contended that *Rector* would not be liable. If he is liable, then *Keatts* is equally so. Or suppose he had filed a bill to make *Rector's* part of the land liable for the purchase money he had advanced, would not the land be responsible for the debt and interest. Can *Rector* be bound in all these ways for his part of the purchase money, and *Keatts* be wholly exempted from all responsibility. How does it vary the case because *Rector* is now seeking relief. Is not the equity something stronger than if he was only a vendee in possession. He made the contract with the Governor, became the rightful owner of the property, put the defendant in possession, clothed him with the legal title, not for his own advantage, but for greater security to the defendant, always claiming to be part and joint owner with him, which was fully admitted and recognized. If all these clear, certain and definite acts, taken apart and collectively, do not conclusively

demonstrate that *Rector*, in good faith and full confidence, executed his part of the agreement; then it is difficult to conceive what constitutes such a part performance, as would take the case out of the Statute. Courts of equity have decreed over and over again, a specific performance alone upon possession of the vendee where that was exclusively taken with reference to the contract; and in no instance have they refused to do so, when the party went on and improved. The case now before the court is infinitely stronger than any one of the cases that have been cited, and in which a specific performance has been decreed. *Sugden*, in his excellent treatise upon *Vendors*, p. 78, says "when agreements have been carried partly into execution, the court will decree the performance of them, in order that one side may not take advantage of the Statute, to be guilty of a fraud."— This doctrine pervades all the authorities, and determines the class of cases in which a specific performance will be enforced. 2 *Johnson's Rep.* 578; *McFerren* vs. *Taylor*, 3 *Cranch*, 270, 281; *Hepburn* vs. *Orr*, 5 *Cranch*, 232; *Davenport* vs. *Mason*, 15 *Mass. R.* 92; *Smith* vs. *Patton*, *Serg. & Raule*, 80.

An agreement will not be considered partly executed, unless the acts done could have been performed with no other view than to the completion of the contract. Apply this principle to the case now under consideration, and what will be the result? Did *Rector* conceal his deeds and have others executed to *Keatts* with no other view than for the purpose of performing his part of the contract? He alleges, and proves that he did so, and the answer, although not in express terms, does in effect admit it. It is said, if possession be merely delivered that the agreement will be considered in part executed, and it will certainly be so treated, if the party go on improving according to the agreement; and that a parol contract in such case will not be within the Statute; for the Statute can never be so termed, construed, or used, as to protect, or be a means of fraud. The delivery of possession by a person having lawful possession to one claiming under the agreement, is held by all the authorities to be a strong and marked circumstance, if not absolutely conclusive, that the agreement itself will be considered as partly executed, and be taken out of the Statute.— In the case now before us, such a delivery of possession is made. The possession was in the complainant, and as it was passed from him, and was accepted by the defendant exclusively in reference to carrying the contract into execution; and a court of equity in such a case is bound

U

LITTLE ROCK, Jan'y 1839

KEATTS *vs.* RECTOR.

to grant relief, and decree a specific performance. *Sugden on Vendors,* 80—*note and authorities.*

This is held to be conclusive of the case, especially when the possession so delivered continued for a number of years, both parties treating the agreement as if it was actually executed in part by the complainant; and when the party who delivered the possession can never be put in the same situation that he was in before he parted with it, and would be placed by the acts of the defendant in such a situation that a fraud could be readily perpetrated upon him with impunity, and when his remedy would be wholly incomplete and inadequate at law.

If each and all these equitable circumstances do not entitle the complainant to a specific execution, then the whole series of decisions on the subject of part performance must be disregarded and overturned, and manifest injustice and wrong be done in the premises.

From an attentive examination of all the authorities upon the subject, and of the principle upon which those decisions are based, this court is clearly of the opinion that the case made out is not within the Statute of frauds and perjuries; and consequently the defendant's plea of that Statute, if he could have been permitted to avail himself of it, was no answer to the equity of the complainant's bill.

In arriving at these conclusions, they confidently assert that they have fallen far short of many of the American and English decisions on the subject of part performance, and in the present case they are at least not chargeable with having extended or enlarged the rule beyond the policy or equity of the Statute.

Having disposed of the plea and the Statute of frauds and perjuries, the cause is then left standing on the bill, answer and depositions, and they clearly show that the complainant is entitled to one equal half or undivided moiety of the land; and after having first paid one half of the purchase money with interest, and one half of the value of the improvements put upon the land; and as the decree of the Circuit Court allowed the defendant nothing for his improvements, in that particular, it is evidently erroneous, and must therefore be reversed and set aside with costs, and the cause remanded to be proceeded in agreeably to the opinion here expressed; which is, that it be ordered, adjudged, and decreed, that the defendant be compelled to execute a deed in fee simple, conveying to the complainant one equal half or undivided moiety of the land contained in lot number eight—being

sixty-seven acres lying on the south side of the Arkansas river; and also one equal half or undivided moiety of the north east and south east quarters of the north west fractional quarter of fractional section seven, in township one north of range eleven west, being eighty acres; and upon the signing, sealing, and delivery of the deeds, that it be further ordered, adjudged, and decreed, that the complainant pay to the defendant one half of the purchase money with interest, up to the commencement of this suit; and also that he pay one half of the permanent improvements made upon the land up to the same time, to be estimated and ascertained by an auditor appointed for the purpose, and according to law. And that it be further ordered, adjudged, and decreed, that the defendant be charged with one equal half of the rents, or mense profits arising from the cultivation of the land from the time that it came into his possession, up to the final decree in the case, and delivery, of possession; to be estimated and ascertained in the same manner as the value of the improvements are directed, to be; and that one half of the value of the rents or mense profits so ascertained, and fixed be ordered, be adjudged and decreed in favor of the complainant.

And that it be further ordered, adjudged, and decreed, that the writ of injunction heretofore granted, be continued until there be a partition or division of the land; and that the defendant pay all the costs in the court below that has already accrued, or that may accrue hereafter.