RINGGOLD vs. STONE ET AL.

Where a plea, in a chancery case, has been disallowed, the same defence set up in the plea may be insisted on by way of answer. (*Kelly's Heirs vs. McGuire et al.*, 15 *Ark*. 607; overruling *Keatts vs. Rector*, 1 *Ark*. 391, as to this point.)

An error in sustaining exceptions to the defence set up in the answer, is unimportant, if it appear that such defence, allowing the defendant the benefit of it, is not sufficient to bar the relief sought.

Under the practice of this Court, the decree of the Circuit Court will not be disturbed for errors committed against a party who submits to the decree, and does not appeal from it.

The adjudication of the Probate Court in the confirmation of the settlements of executors and administrators, under the statute, (*Gould's Dig.*, *ch.* 4, *secs.* 128, 129, 130,) must be regarded as the judgment of a court having jurisdiction of the subject matter and the parties, and is binding and conclusive except for fraud; and such was also the effect of the adjudication of the County Court, under the Territorial law, upon such settlements. (*Ragsdale vs. Stuart*, 3 *Eng.* 270.) And the only mode of correcting mere errors in such settlements, is by appeal.

The executor returned an inventory of the personal estate of his testator, consisting chiefly of bonds and notes due to him individually, and to several firms, of which he was a member—the executor made annual settlements running through several years, and then a final settlement, which was confirmed by the Probate Court. To a bill charging fraud in the settlements, in failing to account for the interest due on the bonds and notes, the defendant answered that some of the bonds and notes were probably due, and bearing interest at some legal rate, not exceeding ten per cent., at the time of the testator's death—that he had collected such of the bonds and notes as were solvent, with such interest as was due; but which of them were due at the testator's death; when they fell due, or what interest they bore, or when, or how much interest was collected, he had no satisfactory means of ascertaining—averring that he had accounted for all interest, and referring to his settlements; by which it appeared that he had accounted for interest only "on money on hand" and "money loaned." The inventory contained an imperfect description of the notes and bonds, omitting to show when they were due, or what interest had accrued, or what rate of interest they bore: no interest on the bonds and notes was accounted for in the settlements, though the greater portion of them had remained uncollected for years, in the hands of the executor: *Held,* that these facts evince a course of conduct in an executor, which it is impossible to reconcile with the absence of fraud; that under such circumstances, every presumption is against the executor, and the law charges him with interest on the bonds, etc., at the highest legal rate, from the time they were executed, in the absence of proof to the contrary.

In a bill to open the settlements of an executor, etc., for fraud, a charge, in general terms, that he fraudulently omitted to account for all the property mentioned in the inventory, is *not* sufficiently specific—the facts and circumstances constituting the fraud must be stated with distinctness and precision. (*Conway vs. Ellison,* 14 *Ark.* 360.)

The allowance of commissions to the executor, for his risk and trouble, and for improvements put upon the testator's real estate, is a matter within the jurisdiction of the Probate Court, and its judgment is conclusive in the absence of proof showing fraud in obtaining such allowance.

*Appeal from Independence Circuit Court in Chancery.*

Hon. B F. Neely, Circuit Judge.

Fowler & Stillwell, for the appellants.

In cases of dead person's estates, and the administration thereof, the Probate Court, in Arkansas, has the exclusive original jurisdiction; and by statute, it is expressly provided that the settlement of an executor or administrator, made as Ringgold made his, and confirmed as his was, " shall never thereafter be subject to investigation, unless in a court of chancery, upon the allegation of fraud in the settlement of such account, supported by the affidavit of the party making such allegation." See *Ark. Dig. p.* 130, *sec.* 111.

This statute thus places such decree of confirmation, upon higher ground than the judgment or decree of any other court.

The plea of Ringgold, and answer in support of it, setting up the final settlement of the administration, and the confirmation by the Probate Court, were a full bar to the action, and should have been allowed—good in form, and good in substance. *Cooper's Eq. Pl.* 279; 5 *Iredell Eq. R.* 143; *Beams Pl. in Eq.* 229.

The plea, and the answer in support of it, in their averments negative the charge of fraud; and the denials of the fraud may be expressed in the most general terms, provided they are sufficient to put the charges of fraud contained in the bill, fully in issue. *Story's Eq. Pl. sec.* 491; *Mit. Eq. Pl.* 244; *Beames Pl. in Eq.* 47, 40. *Cooper's Eq. Pl.* 228; *Freem. Ch. Rep.* 150–206.

The disallowance of the plea was error; and it was also error that the court sustained an exception to the answer in chief, refusing to let Ringgold set up the same matter therein, when he answered fully the whole bill. Thus, in fact, rejecting an undoubtedly valid defence, in any form, and denying justice to the party. And in matter of practice, as well as of right, the rule—though the contrary was held in *Keatts vs. Rector*, 1 *Ark. Rep.*—seems now to be well settled that where a defendant's plea is adjudged defective, (as this was); he may afterwards interpose the same defence by way of answer. *Piatt vs. Oliver et al.*, 2 *McLean*, 276; *Mit. Eq. Pl* 306, 308; 4 *J. C. R.* 551; 4 *How. (Miss.) Rep.* 316; *Kelly's Heirs vs. McGuire*, 15 *Ark. Rep.* 607.

In bills of this sort (even without our statute, which clearly makes the rule more obligatory, by restricting the remedy to fraud, and by requiring the bill to be sworn to) impeaching a settled account, a judgment or a decree, for error, or fraud, the specific errors or frauds relied on must be pointed out in the bill. *Cooper's Eq. Pl.* 278; *Beames Pl. in Eq.* 234; 2 *Bro. Ch. Rep.* 310; 1 *Mad. Ch. Pr.* 102; 7 *How. U. S. Rep.* 827; 2 *Edw. Ch. Rep.* 32–294; *Story's Eq. Pl. sec.* 800; 15 *Wend. Rcp.* 85.

This is an old case running through nearly a quarter of a century, and all the allegations of fraud, general and special, if there be any special, are fully, unequivocally and positively denied by the answer; and not one particle of proof given tending to an impeachment of the answer. Fraud must be proved —never presumed. 14 *Ark. Rep.* 363; 14 *Smedes & Mar.* 42.

Acts of Ringgold, as executor, which may have been the subject of mistake of fact, or of law, are not evidence of fraud to set aside his settlement—mistake is a very different thing from fraud. 4 *Mason C. C. R.* 134; 1 *McCord Ch. Rep.* 161.

The confirmed settlement of Ringgold was a final judgment, and binding on all privies as well as parties, except for fraud, shown in a proper mode—specially alleged and proved, (1 *Freem. Ch. Rep.* 150; 14 *Ark. Rep.* 362; 6 *How. (Miss,) Rep.* 360; 4 *Smedes & Marsh. Rep.* 98; 4 *Mason's C. C. Rep.* 133,) and cannot be set aside because the proceedings were irregular, erroneous or voidable. *Dooley et al. vs. Dooley et al.*, 14 *Ark.* 124; 7 *How. (Miss) Rcp.* 19; *Freem. Ch. Rep.* 150, 151; 1 *McCord's Ch. Rep.* 161; 14 *Ark.* 362.

W. BYERS, for the appellees.

The appellant insists that the decree should be reversed.

1st. Because the court disallowed his plea.

2d. Because the court sustained the exception to his answer, and would not allow him to make the same defence by way of answer, which he had attempted to set up by plea.

3d. That the allegations of fraud are not sufficiently specific in the bill, etc.

We think these, as well as other points of less importance, taken by the appellant, are untenable: and we insist the decree should be affirmed: that if there is error in it, it is against us, in not giving to us as much as we were entitled to.

That the allegations in the bills are sufficiently specific, we think there can be no doubt, to require the appellant to make a full discovery; and especially when we look at the relation of the parties. The complainants were minors during all the time of the settlements, and consequently could know but little about the particular facts connected with the settlements; while the appellant transacted all the business, and necessarily should be cognizant of all the facts; hence, the complainants could not be required to be as specific in their charges as one who necessarily knew all the facts; and the appellant, from his relation, would be required to discover more minutely than one who could not be expected to be so familiar with the facts.

That the allegations are sufficient. See *Story Eq. Pl. secs.* 28, 240, 252 and 253.

*Actual or positive fraud,* is defined to be " any cunning deception, or artifice, used to circumvent, cheat, or deceive another. *Story's Eq. Ju.,* sec. 186.

There is also another class of *implied or constructive frauds,* which are within the remedial jurisdiction of a court of equity. Fraud, indeed, in the sense of a court of equity, " *properly includes all acts of* OMMISSIONS *and* CONCEALMENTS *which involve a* BREACH OF LEGAL OR EQUITABLE DUTY, TRUST OR CONFIDENCE, *justly reposed and which are injurious to another, or by which an undue and unconscientious advantage is taken of another.*" *Story's Eq. Ju. secs.* 187, 188, *et seque.*

The appellant, by law, and in discharge of the trust and confidence reposed in him by the will, was bound to collect all interest which accrued on solvent notes in his hands—and to account for all property which came to his hands The bill specifically alleges that he did not do so. Were not all these acts charged against him, *acts of* OMISSIONS, *which involve a breach of legal or equitable duty, trust, or confidence?* He stood to the

children of Redman as a trustee, by the will.  1 *Story's Eq. Ju.*, secs. 318, 319 *to* 21, *et seque.*

If we understand the appellant's counsel, he insists that there must be *actual or positive fraud charged and proved* against the appellant, to authorize the opening of the settlements; and that *legal or constructive fraud* is not sufficient.  This doctrine we deem wholly untenable.  It was the appellant's duty—*sworn legal duty*—to collect and account for interest which accrued on the good notes, and to put the money on hand out at interest, and to account for the same.  And if he *omitted* and *neglected* to perform this duty, it was a legal or constructive fraud upon the rights of the complainants, and affects them as injuriously and mischievously as if the fraud was actual.  It makes no difference whether the acts complained of were done with the *intent and design* to injure, or flow from the *culpable negligence* and *omission* to perform a legal or equitable duty, trust, or confidence reposed in him.

The plea filed in this case should not only have set up the judgment of the Probate Court relied upon, but should also have negatived every allegation of fraud charged in the bill. Because the material issue is not the judgment, but the facts set up in the bill in avoidance of it.  *Story's Eq. Pl.*, sec. 674.

And as a discovery is sought in relation to the very matters charged in avoidance, he is compelled to accompany his plea with an answer fully responding and discovering the real facts and circumstances as to the matters charged.  *Story's Eq. Pl.*, sec. 680.

The answer must not only negative *all* the facts, *but circumstances* charged.  *Ib. sec.* 683.

It must not merely deny the allegations in the bill, but must set forth the facts as they really are.  *Story's Eq. Pl.*, sec. 685; *Daniel Pl. & Pr.* 711, 756; 3 *Paige*, 273; 5 *Paige* 26; 4 *Paige*, 178.

In his answers, in support of his plea, he does not even attempt to set forth the facts and circumstances as they really existed relative to said settlements; but they consist of *broad*

*denials, bold assertions, and abusive epithets,* EVADING *the discovery of the circumstances charged against him.*

The answer is no part of the plea. The plea may be in general terms; but the defendant must answer the facts of fraud alleged in the bill, so fully as to leave no doubt in the mind of the court. *Story's Eq. Pl., sec.* 691.

As the defendant has a right to invalidate the plea. *Ib. secs.* 671, (*note* 2,) 672, 673, (*note* 1.)

The court, in examining the plea, looks into the sufficiency of the answer, and if it is not full, will overrule the plea. 1 *Hoff. Ch. Pr.* 227; (*and note* 3.) No exception can be filed to the answer while the plea is depending. *Ib.*

Every fact stated in the bill, and not denied in the answer, in support of the plea, must be taken to be true, *Story's Eq. Pl., sec.* 674, *note* 1.

By applying these principles, the answers in support of the plea were insufficient, and the plea properly overruled or disallowed.

That the court correctly sustained the exception to the appellant's answer, which attempted to set up the same matter that he had plead, and which had been overruled, we only deem it necessary to refer the court to the case of *Keats vs. Rector,* 1 *Ark.* 412, where the question was expressly decided.

Mr. Justice COMPTON delivered the opinion of the Court.

The bill in this case was brought by the legatees, under the will of John Redman, deceased, against John Ringgold and others.

The testator had been engaged for a number of years, in the business of a merchant; and at the time of his death was interested as a partner in two mercantile establishments; the one under the name of *Ringgold & Redman,* and the other, under that of Ringgold, Redman & Co.; the partners in the former being *Ringgold* and the testator, and those in the latter, *Ringgold,* the testator and Henry R. Hynson. Besides his joint interest in these mercantile establishments, the testator, at the

time of his death, was also seized and possessed of a separate estate, both real and personal, consisting chiefly of bonds and promissory notes on divers persons. The testator, after making sundry bequests, appointed Ringgold and Mrs. Redman, his wife, executor and executrix of his will, who qualified as such, and possessed themselves, not only of the separate estate of their testator, but also of the effects of the mercantile establishments (consisting in part of promissory notes and bonds for the payment of money,) and filed in the County Court an inventory of the same.

After making their first annual settlement with the court— which was done at July term, 1834—Mrs. Redman intermarried with *Daniel J. Chapman*, and from that time forward, Ringgold acted alone in the settlement of the testator's estate, making further settlements with the court in 1835, 1836, 1837, 1338, 1839, 1841 and 1845—the last mentioned being a final settlement. The object of the bill was to impeach these settlements. Ringgold pleaded the settlements and decrees of the County and Probate Courts in bar to the relief sought. The plea was disallowed, and he made the same defence by way of answer. The Chancellor sustained an exception to so much of the answer as set up the subject matter of the plea. This was error. *Keatts vs. Rector*, 1 *Ark.* 391, cited by counsel to sustain the ruling of the Chancellor, was, in effect, overruled by the subsequent decision of this court, in *Kelly's Heirs vs. McGuire et al.*, 15 *Ark.* 607, where it is held that after a plea has been disallowed, the same defence may be insisted on by way of answer. The erroneous decision of this preliminary question becomes unimportant, however, if it shall appear from the evidence adduced, that the settlements were successfully impeached, even allowing Ringgold the benefit of the defence denied him by the Chancellor.

On the final hearing the Chancellor opened the accounts, and referred them to the Master for re-statement. Ringgold alone appealed, and so much only of the decree as is against him will be examined here.

In order to test the correctness of the decree, we will first ascertain the jurisdiction of the courts which passed upon the matters in controversy, and the nature of their adjudication.

Under our judicial system, the Probate Court has jurisdiction in the settlement and allowance of executors and administrators, and to hear and determine all controversies respecting such accounts, *Gould's Dig. chap.* 48, *sec.* 2; and our statute, regulating the administration of the estates of deceased persons, provides that every account presented to the Probate Court by any executor or administrator, for settlement or confirmation, shall be continued, without being acted on, until the next term of the court, the Clerk giving notice by publication in some newspaper, or by advertisement set up in his office, and on the court house door, of the filing of said accounts, to all persons interested in the settlement of the estate, calling on them to appear and file exceptions to the account, if any they have, on or before the second day of the next term of the court; and the statute further provides that if exceptions are not filed within the time specified, the account shall be examined and confirmed by the court, and when confirmed, shall never thereafter be subject to investigation, unless in a court of chancery, upon the allegation of fraud supported by the affidavit of the party making such allegation. *Gould's. Dig. chap.* 4, *secs.* 128, 129, 130. By the same act the right of appeal is secured. The jurisdiction and powers thus conferred on the Probate Court, are ample, and its adjudication upon the matters now drawn in controversy, must be regarded as the judgment of a court having jurisdiction of the subject matter, and the parties, and is binding and conclusive except for fraud.

Under the Territorial Statute, which was in force at the time some of the settlements were made, the County Court had jurisdiction in matters testamentary, with powers essentially similar to those now exercised by the Probate Court; and its adjudication was a judgment likewise conclusive, if not vitiated by fraud, as held in *Raysdale vs. Stuart,* 3 *Eng.* 270. So that

if mere errors occurred in the settlement of the appellant's accounts, the only mode of correcting them was by appeal.

The Chancellor was of opinion that the appellant had fraudulently omitted to account for interest which accrued on the bonds, notes, etc., that were solvent, and belonged to the testator, separately and in his individual right, at the time of his death, as also for the testator's part of the interest which accrued on the bonds, notes, etc., that were solvent, and belonged to the mercantile firms of which the testator was a member; and decreed against the appellant accordingly, with directions to the Master that, in taking an account of the interest, he should deem the bonds and notes as falling due twelve months after the death of the testator, unless the contrary should appear in evidence, and charge the appellant with interest at the rate of six per cent. per annum from that time until they were collected, unless the evidence should show that they bore interest at a different rate.

We agree with the Chancellor that the omission to account for interest was fraudulent. The appellant admits, in his answer, that some of the bonds and notes were probably due, and bearing interest at some legal rate, not exceeding ten per cent., at the time of his testator's death, and that he collected all such of them as were on solvent persons, and legally collectable, with such interest as was due on them; but what portion of the bonds and notes were due at the time of the testator's death, or when any of them fell due, or what rate of interest they bore, or when or how much of such interest was paid to him, he had no satisfactory or reliable means of ascertaining; and avers that all the interest which he ever collected on them he fully paid over and accounted for, in his several settlements with the County and Probate Courts, charging himself therewith, from time to time, " either under the head of interest, cash received, or some other appropriate head," and referring to an authenticated copy of his settlements, and the inventory of his testator's estate, made them a part of his answer. The inventory contained an imperfect description of

the bonds and notes, omitting to show when they were due, what amount of interest, or whether any, had then accrued, or what rate of interest they bore. The appellant, in the settlement made in 1834, charged himself with the principal sum as set forth in the inventory, and, though the greater part of the bonds and notes continued to remain in his hands, for several years, uncollected, he never, in either of his settlements, charged himself with any of the interest, which, he admits, he collected on them—the only interest accounted for being that which accrued " on money on hand," as charged in the settlement of 1836, and that " on money loaned out," as charged in the settlements of 1837 and 1839. These facts evince a course of conduct in an executor which it is impossible to reconcile with the absence of fraud.

The directions to the Master, for his guidance in ascertaining the amount of the interest to be accounted for, were erroneous.

As has been remarked, the appellant, as executor, did not make and file in Court a perfect inventory of the bonds and notes, nor did he show, in his accounts, what amount of interest he had received—thus failing to preserve, as it was his duty to do, the evidence necessary to establish the exact amount of interest, which he fraudulently withheld; and when interrogated, under oath, was found ignorant of that which it was his duty to know. Under such circumstances, every presumption is against the appellant, and the law charges him with interest on the bonds at the highest legal rate, from the time they were executed, in the absence of proof to the contrary. *Smith's Lead. Cases, vol.* 1, *pages* 470, 474; *Finch vs. Ragland,* 2 *Dev. Eq. R.* 143. Although this rule might operate, in some instances, to charge the executor with more interest than he received, yet, in all such cases, the hardship would result from a breach of legal duty on his part; while a rule, less rigid, would encourage executors not to preserve the evidence necessary to fix their liability for interest received and appropriated to their own use. *Vide Finch vs. Ragland,* 2 *Dev. Eq. R.* 143. But, inasmuch as this error was against the appellees, who did

-not appeal, the decree, under our practice, will not be disturbed, because of the erroneous decision of the Court below, upon this point. *Dooley et al. vs. Dooley et al.*, 14 *Ark.* 125.

Whether the Chancellor decreed against the appellant for interest other than he had accounted for, on cash balances in his hands at each settlement, does not distinctly appear. The decree, as copied into the transcript, is far from being clear and explicit as to the fact. Upon a careful examination, however, we have concluded that he did not; and could not have so decreed upon the evidence before him.

The decree against the appellant for the value of sundry articles of personalty, was erroneous. The bill charged, in general terms, that the appellant fraudulently omitted to account for all the property mentioned in the inventory. This allegation was not sufficiently specific. This Court held in *Conway vs. Ellison*, 14 *Ark.* 360, that " when fraud is relied on as a ground of relief, the facts and circumstances constituting the fraud, must be stated in the bill with distinctness and precision, so as to apprise the defendant of the true matter of the case, and the points to which testimony should be supplied."

The decree opening the settlements, and directing an investigation before the Master, as to the items of commissions allowed the appellant for his risk and trouble in the settlement of the testator's estate, and also as to the item of $736 52, allowed for improvements put upon the testator's real estate, was likewise erroneous. There was no evidence of fraud connected with the allowance of these items; and we have seen that the County Court had jurisdiction of the subject matter, and the parties, and that its judgment was conclusive, except for fraud.

Upon the whole case, we are of opinion that so much of the decree as requires the appellant to account for the interest which accrued on the bonds, notes, etc., that were solvent, and belonged to the testator separately, at the time of his death, as also for the testator's part of the interest which accrued on solvent bonds, notes, etc., belonging to the mercantile firms of

which the testator was a member, together with the directions of the Chancellor for taking an account in respect thereof, ought to be affirmed; and that so much of the decree as is against the appellant, touching all other matters in the cause, ought to be reversed—the appellant and the appellees each paying one-half the costs in this Court.

Mr. Justice RECTOR, dissenting.

I cannot yield my assent to the opinion expressed by a majority of the Court in this cause.

1st. By the Statute, *Gould's Dig.*, *chap.* 134, *sec.* 37, which provides that the Supreme Court, on appeal, or error, shall " award a new trial, reverse or affirm the decision of the Circuit Court, or give such judgment as such Court ought to have given, as may seem most agreeable to law," I am of the opinion that the whole case is before this Court for revision, whether one or both parties appeal. Appellate tribunals are not created exclusively for the relief of the complaining litigant or appellant. But as well that the laws of the land may be administered correctly—irrespective of whether the Court below misconstrued them, as to the rights of the appellant, or appellee. The phraseology of the statute seems to confer plenary powers on the Supreme Court—doubtless, that complete justice should be dispensed whensoever by appeal its authority should be invoked. And this, I think, is in consonance with reason and justice, as it is quite as probable, if error is committed at all, that it be found as well against the appellee as the appellant. I cannot perceive a necessity, in order that the former obtain justice, for him to appeal a cause which, by the action of his adversary, is already before a tribunal, directed by law to give such judgment as ought to have been given by the Court from whence it has been removed.

Secondly. After an attentive investigation of the case, upon its merits, I am unable to arrive at any other conclusion than that the grossest frauds pervade the entire administration of

Ringgold, commencing with the inventory, filed in 1834, and ending with his final settlement in 1845.

The several judgments of the County and Probate Courts are those, to be sure, rendered by competent authority, and, except for fraud, must be held irrevocable, even in a Court of Equity.

But it is specifically charged; and established, to my mind, that, 1st. The inventory filed by Ringgold, (intentionally) excluded property then in his possession and belonging to Redman's estate.

Thirdly. That sundry articles of personalty, enumerated in the inventory, never were accounted for by him, but negligently wasted, or appropriated to his own use.

Fourthly. That his accounts rendered for commissions, were deceptive, excessive, unauthorized by law, and were calculated and did deceive the Court of Probate, which allowed them. Hence, fraudulent.

Fifthly. That Ringgold's failure to charge himself with interest on bonds, bills and notes collected, is fraud, and vitiates each and every judgment or settlement obtained by him before the Probate Court.

The Court below was then clearly right, it appears to me, in opening the settlements, and ordering an account taken. But committed error in requiring Ringgold to sustain by proof *aliunde*, the items allowed him on settlement for the support of Mrs. Redman and her children, and for improving the home lot in Batesville; as these were matters purely within the discretion of the Court of Probate, and no where else examinable upon an allegation of fraud.